## HARDT v. KIRKPATRICK.[*]
### No. 8425.

Circuit Court of Appeals, Ninth Circuit.
July 26, 1937.

---

[*]Rehearing denied Oct. 11, 1937.

Surr & Hellyer, of San Bernardino, Cal., for appellant.

N. C. Peters, of San Bernardino, Cal., for appellee.

Before WILBUR, GARRECHT, and HANEY, Circuit Judges.

GARRECHT, Circuit Judge.

On February 16, 1928, the appellee and Mary Kirkpatrick, his wife, executed a note for $4,000, secured by a deed of trust in favor of the appellant. The deed of trust covered a tract of land in San Bernardino county, Cal., of which parcel the appellee and his wife were joint owners. The Pioneer Title Insurance & Trust Company, of San Bernardino, Cal., was named trustee in the deed. Five shares of the capital stock of the Monte Vista Water Company were also conveyed in the same deed.

On September 7, 1933, the appellant became sole owner and holder of the note.

On October 18, 1935, the appellee started a proceeding under section 75 of the Bankruptcy Act, as amended (11 U.S.C.A. § 203), by filing a petition for composition or extension of time to pay his debts.

On April 17, 1936, the appellant filed a petition for a dismissal of the proceeding under section 75, and for leave to sell the property subject to the deed of trust. The appellant's petition was filed with the conciliation commissioner to whom the appellee's petition under section 75 had been referred.

On April 23, 1936, the appellee obtained an order extending to July 1, 1936, the time for him to apply for approval of a composition or extension proposal.

On May 15, 1936, the appellant's petition for leave to foreclose the trust deed by sale of the premises and to dismiss the ap-

pellee's petition was heard by the conciliation commissioner. On the same day, the appellee's proposal for composition or extension was submitted to his creditors. The appellant indicated that the terms were satisfactory, but insisted upon the dismissal of the proceedings under section 75 as a condition to entering into any composition or extension agreement. No agreement was made.

On June 10, 1936, the appellee filed an amended petition to be adjudged a bankrupt, under section 75 (s) of the Bankruptcy Act, as amended (11 U.S.C.A. § 203 (s). praying that all his property be appraised; that the unencumbered exemption and unencumbered interest or equity in the exemption be set off to the appellee; that he be allowed to retain possession under the supervision and control of the court of "any part or parcel and all of the remainder of" his property, including encumbered exemptions; that he be allowed to pay for such property under the terms of section 75 (s), as amended; and that the court fix the reasonable rental value of the property of which the appellee remained in possession. The appellee was adjudged a bankrupt on the same day.

On September 26, 1936, the conciliation commissioner denied the appellant's petition for dismissal and leave to sell.

On October 6, 1936, the appellant filed a petition for a review of the commissioner's order of denial. That petition is still pending in the court below.

On October 13, 1936, the appellant caused the trustee under the deed referred to above to sell the property covered thereby. At that sale, the appellant purchased the property for $5,250, which sum was at least $500 more than the market value of the property, according to an averment contained in the appellant's answer to the appellee's petition for an injunction, infra. In the same answer, the appellant denied that any "order was ever made by the above entitled Court prior to said sale on October 13, 1936, restraining Hardt or Pioneer Title Insurance and Trust Company from conducting such sale or any sale."

The time of the commencement of foreclosure proceedings under the deed of trust is not stated in the pleadings.

On October 19, 1936, the appellee filed a petition for an injunction, setting forth some of the foregoing facts, and praying that the sale under the deed of trust be declared void; that the appellant and his representatives be enjoined from recording the deed issued by the trustee and from endeavoring to obtain possession of the property; and that the appellant and his attorney, John Surr, be required to show cause why they should not be punished for contempt, etc.

On or about October 30, 1936, the appellant filed an answer to the foregoing petition for an injunction, averring several of the facts that have been set out in the present statement.

By agreement of counsel, the matter was submitted to the court below on the verified petition for an injunction and the verified answer thereto, on the records of the court, and on the briefs of counsel; but no evidence was presented to the court.

On November 24, 1936, the court below entered an order, in opinion form, declaring the sale under the trust deed to be invalid, and enjoining the appellant from interfering with the appellee's possession. In re Kirkpatrick (D.C.) 17 F. Supp. 56.

From that order the present appeal has been taken.

The appellant argues that, since the petition for an injunction, filed by the appellee in the court below, is silent as to the date when the foreclosure proceedings were commenced, it must be assumed that such foreclosure was started before any bankruptcy proceedings were initiated. This argument is based upon the theory that, since the appellee was the moving party, seeking an injunction, the burden was upon him to prove his case. Elsewhere in his brief, however, the appellant states that there is no distinction between sales before adjudication and sales thereafter. With this statement the appellee seems to agree. In its opinion, the court below stated that, "At the time of the sale, the proceeding for conciliation had terminated," and that "all proceedings for the foreclosure of the deed of trust under the power of sale were initiated while the property was in the custody of this court under proceedings first instituted under section 75 and then continued under section 75 (s) of the Bankruptcy Act." In re Kirkpatrick, supra, 17 F.Supp. 56, at page 57.

In view of the fact that the appellant's answer to the petition for an injunction

was likewise silent as to the date on which foreclosure proceedings were instituted, we are assuming for the purpose of this case that such proceedings were initiated after the adjudication of bankruptcy. It is the appellant's duty to bring up a record that discloses error. Every intendment should be in favor of the lower court's judgment.

The question here presented is whether, while proceedings under section 75 of the Bankruptcy Act are pending, and after the debtor is adjudged a bankrupt, a creditor may foreclose by nonjudicial sale under a deed of trust without permission of the court.

The appellee insists that the appellant, having submitted himself to the lower court's jurisdiction by asking permission to sell and by asking review of the conciliation commissioner's order denying him that right after adjudication, appears to be in contempt as a result of selling the property "in defiance of the court's denial."

Section 75 (*o*) of the Bankruptcy Act (11 U.S.C.A. § 203 (*o*) provides that, "Except upon petition made to and granted by the judge after hearing and report by the conciliation commissioner," sales of the debtor's property under a power of sale, inter alia, shall not be instituted or maintained "at any time after the filing of the petition under this section, and prior to the confirmation or other disposition of the composition or extension proposal by the court."

The language of section 75 (*o*) makes it clear that its prohibition against sales of the debtor's property applies only to a period "prior to the confirmation or other disposition of the composition or extension proposal." The adjudication of the debtor as a bankrupt is clearly a "disposition" by the court of the "composition or extension proposal," and all proceedings thereafter are governed by subsection (s) and not by subsection (*o*).

It should be observed, in this connection, that the appellant filed his petition for leave to sell with the conciliation commissioner nearly two months before the adjudication in bankruptcy. In other words, the appellant's petition was presented at a time when, under subsection (*o*), a sale under the deed of trust was forbidden "except upon petition made to and granted by the judge after hearing and report by the conciliation commissioner." Subsection (*o*)

ceased to apply upon the adjudication of bankruptcy.

After adjudication of bankruptcy, therefore, the farmer-debtor's rights are measured by subsection (s), rather than by subsection (*o*).

Subsection (s) contains no clause that would deprive the appellant, under the facts of this case, of the right of proceeding with a nonjudicial sale under his deed of trust. It is true that paragraph 2 of that subsection provides that, "When the conditions set forth in this section have been complied with, the court shall stay all judicial or official proceedings in any court, or under the direction of any official, against the debtor or any of his property, for a period of three years." Among the "conditions" named in the same subsection, in paragraph 1, are the appraisal of the debtor's property and the setting aside of the debtor's unencumbered exemptions, etc. These conditions, so far as the record before us discloses, have not been met in the instant case.

Furthermore, the "stay" provided for in paragraph 1 is a judicial stay, not an automatic one. The record in this case shows that no order was issued by the court below enjoining the appellant from proceeding with his sale. The mere denial by the conciliation commissioner of the appellant's petition, filed *before* adjudication under subsection (*o*), asking for permission to sell the property under the deed of trust, is not equivalent to an injunction or "stay" by the court, within the meaning of subsection (s), par. 2, supra.

Since there is nothing in section 75 (s) to prevent the appellant from exercising the power of sale under the deed of trust, in the absence of a court order staying such sale, we must turn to the general bankruptcy law to ascertain whether we can find any such prohibition there.

In Heffron v. Western Loan & Building Co., 84 F.(2d) 301, 303, certiorari denied 299 U.S. 597, 57 S.Ct. 189, 81 L.Ed. ——, this court said: "But it is equally well settled that, in the absence of factors requiring interference, a court of bankruptcy will not disturb the foreclosure of a lien by nonjudicial action when such foreclosure is in accord with the agreement of the lienor and lienee."

The appellee seeks to distinguish the Heffron Case from the present controversy

by pointing out that in the former the sale was prior to adjudication. This contention, however, is disposed of by the Heffron opinion itself, 84 F.(2d) 301, at page 304: "Manifestly, the mere fact that the bankrupt's property comes into custodia legis, or that title passes to the trustee, does not ipso facto void a subsequent foreclosure of a lien against the property."

Our decision in the Heffron Case accords with general law. In Hiscock v. Varick Bank, 206 U.S. 28, 40, 41, 27 S.Ct. 681, 685, 51 L.Ed. 945, Mr. Chief Justice Fuller said:

"Section 57h [11 U.S.C.A. § 93 (h)] provides: 'The value of securities held by secured creditors shall be determined by converting the same into money according to the terms of the agreement pursuant to which such securities were delivered to such creditors or by such creditors and the trustee, by agreement, arbitration, compromise, or litigation, as the court may direct, and the amount of such value shall be credited upon such claims, and a dividend shall be paid only on the unpaid balance.'
* * *

"The court was by this subdivision empowered to direct a disposition of the pledge, or the ascertainment of its value, where the parties had failed to do so by their own agreement. *It is only when the securities have not been disposed of by the creditor in accordance with his contract that the court may direct what shall be done in the premises.* Of course, where there is fraud or a proceeding contrary to the contract, the interposition of the court might properly be invoked. * * *

"When the petition in the present case was filed the bank had a valid lien upon these policies for the payment of its debt. The contracts under which they were pledged were valid and enforceable under the laws of New York, where the debt was incurred and the lien created. The bankruptcy act did not attempt, by any of its provisions, to deprive a lienor of any remedy which the law of the state vested him with; on the other hand, it provided, § 67d [11 U.S.C.A. § 107 (d)]: 'Liens given or accepted in good faith, and not in contemplation of, or in fraud upon, this act, and for a present consideration, which have been recorded according to law, if record thereof was necessary in order to impart notice, shall not be affected by this act.'" (Italics our own.)

In the case of In re North Star Ice & Coal Co. (D.C.) 252 F. 301, 303, District Judge Sanford, who was later Associate Justice of the Supreme Court, said: "Under section 70 of the Bankruptcy Act (Comp. St.1916, § 9654 [11 U.S.C.A. § 110]), the trustee is vested only with the bankrupt's title to property. Hence where the bankrupt's property is subject to a mortgage or other incumbrances, the trustee takes only the bankrupt's equity therein, subject to such incumbrances; and since, under section 67 of the Act (section 9651 [11 U.S.C.A. § 107]), the validity of pre-existing liens is not affected, the lien holder, *unless restrained by the order of the bankruptcy court,* may enforce the same dehors the court. [Authorities cited.]" (Italics our own.) See, also, In re Southern Pharmaceutical Co. (D.C.) 286 F. 148, 151; In re Dayton Coal & Iron Co. (D.C.) 291 F. 390, 400, 401; Robinson v. Kay (C.C.A. 9) 7 F.(2d) 576, 578; Petition of Cox (C.C.A.1) 15 F.(2d) 764, 765.

In its opinion, the court below stated that to approve the lienholder's foreclosure "after it is done, is to sanction the flaunting of the power of the bankruptcy court— a flaunting which would destroy the effectiveness of the administration of the Bankruptcy Act."

We cannot concur in this view. Section 75 (s) of the Bankruptcy Act itself provides a direct and orderly means by which the court can prevent any such flaunting—the simple expedient of issuing a stay against the lienor's sale. Not having seen fit to do this, the District Court cannot complain of the flaunting of an authority that it did not choose to exercise.

In his answer to the appellee's petition for an injunction, the appellant averred under oath that the amount bid and paid for the real property and water stock, $5,250, "was and ever since has been far in excess of the value of said real property and water stock, and said sale was in all respects fair and regular." In his brief, the appellee concedes that "in this case the market value was paid for the property," but argues that "Paying a reasonable price cannot validate illegal taking of property from the jurisdiction of the court."

In the language of Hiscock v. Varick Bank, supra, in the instant case there is no "fraud or a proceeding contrary to the contract" as a result of which "the inter-

position of the court might properly be invoked." Therefore, "in the absence of factors requiring interference, a court of bankruptcy will not disturb the foreclosure of a lien by nonjudicial action when such foreclosure is in accord with the agreement of the lienor and lienee." Heffron v. Western Loan & Building Co., supra.

Accordingly, the order of the court below is reversed.

