## GINS v. MAUSER PLUMBING SUPPLY CO., Inc., et al.

## In re REALTY RENOVATING CORPORATION.

District Court, S. D. New York.

Dec. 23, 1943.

Krause, Hirsch & Levin, of New York City, for plaintiff.

Daniel Levy, of New York City (Daniel Levy, of New York City, and Milton H. Goldberger, of Newark, N. J., of counsel), for defendants.

CONGER, District Judge.

Action by a Trustee in Bankruptcy pursuant to Sections 60, 67 and 70 of the Bankruptcy Act, 11 U.S.C.A. §§ 96, 107, 110, to recover certain property which at one time had been owned and possessed by the Bankrupt and which consisted of negotiable instruments, assignments of rents and other documents acquired by the defendant, Mauser Plumbing Supply Co., Inc., after bankruptcy.

On the 1st day of May, 1939, an involuntary petition to have the Realty Renovating Corp. adjudicated a bankrupt was filed in the United States District Court for the Southern District of New York.

On the 15th day of June, 1939, the said Realty Renovating Corporation was adjudicated a bankrupt. On the 11th day of July, 1939, plaintiff was elected Trustee of the estate of said bankrupt. Plaintiff duly qualified and has been ever since and is now the duly elected and acting Trustee of the said bankrupt. As such Trustee, plaintiff brings this action under the authority of § 60 of the Bankruptcy Act for the purpose of avoiding a preferential transfer, and under the authority of § 67 of said Act for the purpose of avoiding a fraudulent transfer and under the provisions of § 70 of said Act for the purpose of avoiding a transfer declared to be void as against him, the said Trustee.

There are five causes of action set forth in the complaint. The fifth cause of action was withdrawn at the opening of the trial. This leaves for determination the first four causes of action in the said complaint.

I shall first set forth the facts which I have found before discussing the various causes of action. There is very little dispute as to the material facts.

The Realty Renovating Corp. had been in business for a number of years, engaged in building contract work and in the alteration and improvement of buildings. The defendant, Saul Lanoil, was a plumbing contractor and the defendant, Mauser Plumbing Supply Co., Inc. (hereinafter designated as Mauser Plumbing), was a wholesale plumbing supply company, selling plumbing materials to plumbing contractors. The defendant, Lew Mauser, was an officer of Mauser Plumbing.

On or about January, 1938, Realty Renovating Corp. entered into a contract to renovate certain premises known as 667 Madison Avenue, New York City, with the owner of the fee thereof, 667 Madison Avenue, Inc. Payment of the contract price was made by promissory notes of the

owner which was secured by an assignment of rents to Realty Renovating Corp.

On or about the 22nd day of June, 1938, Harnat Holding Corporation (hereinafter designated as Harnat) loaned the sum of $25,000 to Realty Renovating Corp. As collateral security for the payment of said loan, Realty Renovating Corp. assigned to Harnat certain collateral security. This collateral security consisted of the contract with 667 Madison Avenue, Inc., assignment of rents thereof, all the notes and security received from said owner, as well as certain other promissory notes which were also secured by other assignment of rents.

The transaction with Harnat was evidenced by a written agreement and pursuant to said written agreement Realty Renovating Corp. deposited with Harnat the promissory notes owned and held by it, made by 667 Madison Avenue, Inc., by Harris Levy, by Samuel E. Bright, Inc., H. & S. Oil Company, Inc., and the construction contracts, and an assignment of rents executed by each of these concerns in favor of Realty Renovating Corp. In other words, the promissory notes which Realty Renovating Corp. owned and held, and which notes were secured by assignment of rents, were endorsed by Realty Renovating Corp. and deposited with Harnat as collateral security for the said loan of $25,000. Upon the deposit of these with Harnat, the loan of $25,000 was made. These assignments of rents of the various properties were subsequently recorded in the Registrar's office of the City of New York. I know of no provision of law which required the recording of these documents in the Registrar's office. Such recording has no effect upon the determination of this issue, except in so far as it may reflect upon the question of concealment from creditors.

On or about or prior to the 6th day of October, 1938, the Bankrupt owed defendant, Saul Lanoil, the sum of $18,257.30. This account had been assigned to the defendant, Mauser Plumbing. Realty Renovating Corp. also owed Mauser Plumbing $1,042.70. On the said October 6, 1938, Realty Renovating Corp. applied for a loan from Mauser Plumbing in the sum of $3,-700. In addition they desired to obtain a deferment in the payment of the aforesaid open accounts and in consideration thereof and in consideration of the loan of $3,700, Realty Renovating Corp. agreed to pay Mauser Plumbing the sum of $2,750. This made the total amount involved between Mauser Plumbing and Realty Renovating Corp. $25,750. A written agreement dated October 6, 1938, was entered into between these two parties to carry out the terms of the loan and the deferments. The amount, $25,750, was to be paid in installments as provided in said agreement.

This indebtedness to Mauser Plumbing, under the aforesaid agreement, was secured by an assignment of rents covering certain premises at 567 West 149th Street, and an assignment of rents covering premises at 667 Madison Avenue, and as additional security for the payment of the said sum of $25,750, Realty Renovating Corp. assigned all its right, title and interest in and to the promissory notes made by 667 Madison Avenue, Inc., to the owner of Realty Renovating Corp., which were being held in escrow and as collateral security for the loan of $25,000 made by Harnat to Realty Renovating Corp.

On October 6, 1938, when this loan was made and the deferment of payments granted on the open accounts, none of this collateral security which had previously been pledged with Harnat actually came into the possession of Mauser Plumbing. As heretofore stated, it was already in the possession of Harnat and held by Harnat as collateral security for the payment of said loan of $25,000.

On or about the 6th day of October, 1938, pursuant to said agreement, Realty Renovating Corp. assigned to Mauser Plumbing the construction contract between 667 Madison Avenue, Inc., and Realty Renovating Corp. and the assignment of rents agreement made by 667 Madison Avenue, Inc., to Realty Renovating Corp.

On October 6, 1938, Realty Renovating Corp. wrote a letter to Harnat advising Harnat of the transaction between it and Mauser Plumbing and advising Harnat that it was the purpose of Realty Renovating Corp. to turn over to Mauser Plumbing certain of the notes of 667 Madison Avenue, Inc., and which were then in the possession of Harnat. Letter authorized Harnat to turn over to Mauser Plumbing these certain notes when the Harnat loan was paid. Mauser Plumbing on October 6, 1938, received a letter from the attorney of Harnat, acknowledging receipt of the said letter, advising Mauser Plumbing that it would turn over said securities to Mauser Plumbing when the Harnat loan would be paid. This

transaction apparently was completed on or about the 6th day of October, 1938.

Some time in March, 1939, Realty Renovating Corp. apparently found itself in financial difficulties. A meeting of its creditors was called and a certain agreement was drawn up, providing for deferment of payments and other provisions tending to alleviate the situation. Nothing came of this, however. On May 1, 1939, an involuntary petition in bankruptcy was filed. On June 15, 1939, Realty Renovating Corp. was adjudicated a Bankrupt. Between these two dates, there occurred the transactions which are here complained of. In the collateral note which was held by Harnat, there was a provision that the filing of the petition in bankruptcy constituted a default. Mauser Plumbing was in the situation, therefore, of being in danger of being foreclosed of its interest in the collateral held by Harnat. At this time there was due to Harnat on its loan the sum of $7,861.43.

On May 3, 1939, Mauser Plumbing paid to Harnat the said sum of $7,861.43 and received from Harnat all of the papers it had in its possession in connection with the said loan of $25,000, and further received from Harnat an assignment in and by which assignment Harnat did assign over to Mauser Plumbing all of its right, title and interest in and to all of the papers, contracts, agreements and notes which it, Harnat, held in connection with and as security for the payment of the loan of the said $25,000.

Default having occurred, Mauser Plumbing on June 5, 1939, gave written notice to Realty Renovating Corp. to the effect that pursuant to the power of sale contained in the collateral note, the securities which it then held and had received from Harnat would be sold at public auction at a place specified on June 10, 1939. On this day, pursuant to the notice, the sale was had and the collateral security was bid by Mauser Plumbing for the amount of its claim, to wit: the sum of $32,761.41.

The plaintiff in this action asks for a decree and judgment, among other things, that the agreement of assignment and transfer dated June 22, 1938 (the Harnat transaction), be declared preferential, fraudulent, void and of no force or effect. He asked the same relief as to the assignment from Harnat to defendant, Mauser Plumbing, and as to the agreement of assignment and transfer of October 6, 1938 (Mauser

Plumbing transaction), and that the Mauser Plumbing and Lanoil be directed to account to the plaintiff for all sums which came into their possession which might be determined to be the loss suffered by the creditors by reason of the aforesaid transaction.

The defendants, while admitting most of the facts proved by the plaintiff, assert three affirmative defenses:

(a) That plaintiff has failed to prove facts sufficient to constitute a cause of action.

(b) That plaintiff is barred by laches from maintaining the causes of action.

(c) That the sale of securities was held pursuant to law.

I shall take up each cause of action separately. The first cause of action is based on the $60 of the Bankruptcy Act, together with certain provisions of the Personal Property Law of the State of New York, to wit: Certain sections of the Uniform Trust Receipts Law (50 et seq.) which were added to the Personal Property Law of New York in 1934. Plaintiff's contention is that the agreement of October 6, 1938, is voidable because the defendant, Mauser Plumbing, while it received an assignment of the various notes and other documents as collateral security for its loan to Realty Renovating Corp., did not have actual physical possession of this collateral until after the bankruptcy. There is no dispute on the factual question here involved. This collateral, on October 6, 1938, was in the possession of Harnat as security for a loan it had made to the Realty Renovating Corp. Mauser Plumbing did not have actual physical possession of this collateral until May 3, 1939; two days after the petition in bankruptcy had been filed herein. It was admitted that the defendants on May 3, 1939, knew that the petition in bankruptcy had been filed.

The plaintiff argues that pursuant to § 60 of the Bankruptcy Act and the Sections of the Personal Property Law (Uniform Trust Receipts Law), a pledge or an agreement to pledge negotiable instruments not accompanied by physical delivery or possession of the property to the pledgee is invalid against a Trustee in Bankruptcy of the pledgor after ten days of the making of such agreement and if the property is, therefore, physically delivered to the pledgee, the agreement of pledge takes effect only as of the date of such physical delivery without relating back to the time of the making of the agreement.

As applied to this case, plaintiff argues that the pledged instruments only came into the physical possession of Mauser Plumbing two days after the filing of the involuntary petition in bankruptcy at a time when defendants knew of the filing of the said petition, and at a time when they either knew or had reason to believe that Realty Renovating Corp. was insolvent. Plaintiff, therefore, urges that this pledged transaction was voidable.

Plaintiff is correct in this contention and he should be successful in this controversy if it be held that Mauser Plumbing "entruster" did not have actual possession of the pledged instruments until May 3, 1939. The question here devolves upon the effect of the various provisions of the Uniform Trust Receipts Law as incorporated in the Personal Property Laws of New York.

It is true that the Uniform Trust Receipts Law does provide that in the case of an agreement to pledge not perfected by possession, the act limits validity of the "pledgee's" interest against all creditors to ten days. Even where new value has been given by the purported pledgee and in the case where the purported pledge is for old value, the effect against creditors changes only as of the time of possession actually taken. Section 53 of the Personal Property Law.

Possession is also defined in said law as follows: " 'Possession,' as used in this act with reference to possession taken or retained by the entruster, means actual possession of goods, documents or instruments, or, in the case of goods, such constructive possession as, by means of tags or signs or other outward marks placed and remaining in conspicuous places, may reasonably be expected in fact to indicate to the third party in question that the entruster has control over or interest in the goods." Section 51, subd. 9.

The issue here, therefore, gets down to this proposition: Did Mauser Plumbing have "actual possession" of the collateral security in question on October 6, 1938, or did they have actual possession on May 3, 1939? If such actual possession was obtained by Mauser Plumbing on May 3, 1939, then the plaintiff is correct in his contention.

This issue is to be determined by the law of the State of New York. Neither side has furnished me with any decisions of the Courts of the State of New York on this disputed question. I have been unable to find any myself. I am satisfied that this precise question has never been passed upon in New York State since 1934, when the Personal Property Law of the State of New York was amended to include therein the Uniform Trust Receipts Law. Prior to 1934, an agreement of pledge followed by a later delivery of possession operated to relate back the validity of the pledge to the date of the agreement. Many times this worked out as an injustice to creditors who relied upon debtors' possession of property which was pledged. It may very well have been that the Legislator intended to correct this situation. At any rate, the doctrine of later delivery relating back to the date of the original agreement was done away with by the amendment of 1934, as was also constructive delivery.

The question here is: Do we find actual possession in Mauser Plumbing on October 6, 1938? I am convinced we do. I am convinced that the statute never intended to prohibit a transaction similar to the one we have here.

The reasoning in some of the cases decided prior to 1934, it seems to me, points the way and gives guidance on this question. The chief reason for the rule requiring delivery of possession in order to create a valid pledge was to prevent possession by the pledgor from giving him a false credit. This reason ceases when the thing pledged is not in the possession of the pledgor but of a third party. Irving Trust Co. v. Commercial Factors Corp., 2 Cir., 68 F.2d 864.

If plaintiff is correct in his contention, an article once pledged may not again be pledged by a second or subordinate pledge to another pledgee even though the equity be more than ample to cover both pledges. I cannot conceive this to be so, particularly where the first pledge is a good and valid pledge accompanied by actual possession by the first pledgee and an agreement by the first pledgee acknowledging the second pledge. That is exactly what we have here. There is a first pledge to Harnat, a second pledge to Mauser Plumbing and Harnat agreeing to hold the pledged property not only for itself but as well for Mauser Plumbing. There is no question of implied agency, no question of constructive delivery and no question of an equitable lien. I am convinced that through the express agency of Harnat, Mauser Plumbing had actual possession of the securities. I realize that the tendency

of the Bankruptcy Act has been to do away with secret liens. The second pledge, to wit: the Mauser Plumbing transaction was no more secret than the first (Harnat). The pledgor could in no way obtain false credit by the situation. The securities pledged are out of the possession of the pledgor. He has no dominion over them. The second transaction (Mauser Plumbing) was not secret and was not kept any less obvious to the other creditors than was the first transaction. I, therefore, hold against the plaintiff on the first cause of action.

■■ The second cause of action deals with the Harnat agreement of January 22, 1938.

As plaintiff states in his brief: "No attempt is made at this cause of action to set aside or have declared invalid such an agreement as such."

The plaintiff argues that the agreement of October 6, 1938 (Mauser agreement), in so far as it relates to the proceeds of the construction contract affecting 667 Madison Avenue is invalid, and the attempted foreclosure of all securities held by the defendants under the agreements pursuant to its notice of sale dated June 5, 1939, was of no force and effect, because of the fact that such sale took place after the filing of the involuntary petition against the Bankrupt and while the defendants had actual knowledge of the bankruptcy proceeding; that the plaintiff was vested with all the property of the Bankrupt as of the date of the filing of the petition in bankruptcy (May 1, 1939); that the foreclosure sale, pursuant to which the defendants claim title to the property in question, was held on or about June 10, 1939; and that, therefore, no transfer of the assets of the Bankrupt is valid as against the Trustee where such transfer takes place after the filing of the petition unless the transfer was made to a person acting in good faith and for a present fair equivalent value.

Plaintiff points to § 70, sub. d, of the Bankruptcy Act as authority for this proposition. No notice was given to the Bankruptcy Court of the proposed sale and permission was not obtained of said Court to conduct said sale.

At the time the involuntary petition in bankruptcy was filed and at the time of the sale, the collateral in question was not in the possession of the Bankruptcy Court and had not been in the possession of Realty Renovating Corp. since June 22, 1938.

Prior to the enactment of the Chandler Act, 11 U.S.C.A. § 1 et seq., plaintiff's contention was untenable. Sales of this kind have been upheld many times. There had been default. The sale was held in accordance with the agreement and was made pursuant to the power of sales therein contained. There was no question of fraud involved. Such a sale could be had and held legally without interference from the Bankruptcy Court, even though held after filing of involuntary petition in bankruptcy. Hiscock v. Varick Bank of New York, 206 U.S. 28, 27 S.Ct. 681, 51 L.Ed. 945; Hardt v. Kirkpatrick, 9 Cir., 91 F.2d 875; In re Hudson River Nav. Corp., 2 Cir., 57 F.2d 175.

Under the authority of the above cases it was not necessary for the defendant, Mauser Plumbing, to give notice to the Bankruptcy Court of the sale of the said collateral or to obtain permission of the Bankruptcy Court to conduct said sale.

I am convinced that the above authorities still obtain and that § 70, sub. d, of the Bankruptcy Act does not prohibit a sale of the nature and character of the one here involved.

Courts always made and still do make an exception to parties who had a substantial claim of title to or a lien on the Bankrupt's property at the time of bankruptcy. True, the filing of a petition is a "caveat to all the world" but this only applies to parties who have no substantial claim of title to the property of the Bankrupt or the lien thereon when the petition in bankruptcy is filed. As to them, the filing of a petition is neither a caveat nor an attachment and they are unaffected by it at least until the Bankruptcy Court takes actual possession of the property or in some way makes the claimants parties to the proceedings. § 70, sub. d, does not affect this situation. Collier on Bankruptcy, 14th Edition, Pages 1327, 1328, Note 15. See also In re Fisher, D.C., 33 F.Supp. 155; Mason, Trustee v. Wylde, 46 A.B.R.,N.S., 75.

I find nothing in § 70, sub. d, of the Bankruptcy Act to limit or destroy the application of the rule in Hiscock v. Varick Bank, supra. I find against the plaintiff on the second cause of action.

■ The third cause of action is based upon section 15 of the Lien Law of the State of New York and section 60 of the Bankruptcy Act. This cause of action attacks both agreements, the Harnat agree-

ment (June 22, 1938) and the Mauser Plumbing agreement (October 6, 1938).

Plaintiff contends that both agreements are voidable by reason of the provisions of the two aforesaid sections. The complaint alleges that neither agreement was recorded in the County Clerk's Office in accordance with § 15 of the Lien Law; that the transfers sought to be affected by said agreements are these deemed to have been made immediately before bankruptcy in payment of an antecedent debt while the Bankrupt was insolvent, and that the defendants knew or had reasonable cause to believe that the Bankrupt was insolvent at that time and that, therefore, such transfers operated as a preference which must be set aside under § 60, sub. b of the Bankruptcy Act.

§ 15 of the Lien Law provides generally that no assignment of the proceeds of a building contract shall operate to reduce the lien of a sub-contractor, laborer or material-man, nor shall it be valid for any purpose unless a copy of the assignment is filed within ten days after the making thereof in the office of the County Clerk wherein the property is situated and that such assignment shall be only in force from the time of such filing and is void as against a subsequent assignee whose assignment is so recorded.

Plaintiff also relies on § 60, sub. a, of the Bankruptcy Act, which provides that a transfer is deemed to have been made at the time when it "became so far perfected that no bona-fide purchase from the debtor and no creditor could, therefore, have acquired any rights in the property transferred." Neither agreement was filed in the New York County Clerk's Office where the property is situated.

In order to sustain this cause of action, plaintiff must rely on a favorable interpretation of § 15 of the Lien Law. If he fails in that he may not succeed. I am convinced that plaintiff starts out with a false premise and that is as to just the sort of a transaction § 15 is intended to cover. Generally this section contemplates a transaction wherein a contractor or a sub-contractor transfers or assigns to another a contract for the performance of labor, or material or transfers by assignment or an order upon the owner moneys due, or to become due for the improvement of real estate. It is intended to protect and provide for protection of the liens of sub-contractors, laborers and material-men.

True, in this case, building contracts were assigned but these are not the bone of contention between the parties.

The collateral which is the subject of dispute here, and which (or the proceeds thereof) plaintiff seeks to recover, are the promissory notes secured by assignment of rents received both by Harnat and Mauser Plumbing. These may be, for the purpose of this law suit, entirely divorced from the assignment of the building contracts; assuming that the building contracts are void, for failure to record, as against subsequent lienors and/or against the Trustee herein that does not make the notes or the assignment of rents void or voidable.

The promissory notes were not required to be recorded by § 15 of the Lien Law. The notes were not assignment of specific funds nor are they orders on a fund. George E. Sealy Co., Inc., v. Ards Bldg. Corp., 216 App.Div. 313, 214 N.Y.S. 768, affirmed 244 N.Y. 565, 155 N.E. 899.

I am unable to convince myself that the assignment of rents given as collateral security for the payment of the notes were required to be recorded by § 15 of the Lien Law. The notes and assignment of rents were given to secure payment of a loan and they are not within the contemplation of § 15 of the Lien Law.

By reason of the above I find against plaintiff on this cause of action.

The fourth cause of action relies upon § 70 of the Bankruptcy Act and alleges that the failure of the defendants or their predecessors in title to file the agreements in dispute in accordance with the provisions of § 15 of the Lien Law make them void and of no force and effect.

My finding as to this fourth cause of action must necessarily be bound by my holding as to the third cause of action. Plaintiff relies on section 70, sub. e, of the Bankruptcy Act. The question as to whether or not the transfer is void or voidable is dependent wholly on the State Law. In the question at issue, it involves a construction of § 15 of the Lien Law of the State of New York. I have already passed on that in considering the third cause of action. Inasmuch as I have decided (supra) that the documents in question (notes and assignments of rents) were not required by the said section of the Lien Law to be recorded in the County Clerk's Office, it follows that they are not fraudulent or

voidable as against a creditor. I, therefore, find against the plaintiff on the fourth cause of action. There are other questions raised as to this fourth cause of action but they are not pertinent now in view of my finding.

There is a defense of laches urged herein by the defendants. It will not be necessary in view of my holding herein to discuss that question.

Judgment for defendants.

Complaint dismissed on the merits.