In re Joseph S. GREGORY, Debtor.

LAWRENCE TRACTOR COMPANY, a corporation, Plaintiff-Appellant,

v.

Joseph S. GREGORY, Defendant-Appellee.

BAP No. EC–81–1052–GHL. Bankruptcy No. 179–01760. Adv. No. 180–0053.

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued July 16, 1981.

Decided Feb. 9, 1982.

Opinion Filed April 26, 1982.

Frank H. Lang, Jr., Fullerton, Lang, Richert & Patch, Fresno, Cal., for plaintiff-appellant.

M. Nelson Enmark, Fresno, Cal., for defendant-appellee.

Before GEORGE, HUGHES and LASAROW, Bankruptcy Judges.

GEORGE, Bankruptcy Judge:

This appeal results from a judgment denying a complaint to have a debt declared nondischargeable under the allegation that the obligation was not "provided for" in the appellee's Chapter 13 plan. We affirm.

### I. BACKGROUND

The appellant, Lawrence Tractor Company, is an unsecured creditor of the appellee, Joseph S. Gregory, holding a judgment debt arising from the embezzlement of funds by the latter. On November 8, 1979, the appellee filed a petition under Chapter 13 of the Bankruptcy Code. Concurrent with this petition, a plan of arrangement was filed, which proposed to pay $147.71 per month for six months to one secured creditor. Unsecured creditors were to receive nothing under this plan. Since the appellee then had a net income of $624.48 per month, the $147.71 proposed to be paid each month under this plan was undoubtedly most, if not all, of Mr. Gregory's excess disposable monthly income.

On January 2, 1980, this plan was confirmed, following a properly noticed confirmation hearing. No appeal was taken from the confirmation order of the trial court, thus placing any review of the confirmation order outside the panel's jurisdiction.

Thereafter, on March 14, 1980, the appellant filed a complaint to determine the dischargeability of its debt. The principal argument set forth in support of this complaint was that, since the appellant was to receive nothing under this plan, it had not been "provided for" under the plan. Only debts which are "provided for" in a plan are discharged under Chapter 13 of the Code. See 11 U.S.C. § 1328(a) (West's Supp.1980). The appellant bolstered this contention with

the allegations that a) no zero-payment plan could have been deemed to have been filed in good faith, in the first place, and b) the appellee's plan had not actually been filed in good faith.

After making two payments under his plan, Mr. Gregory received some $2,220.74, pursuant to the refinancing of his automobile. In full satisfaction of his plan, the appellee assigned this money to the Trustee in charge of his case. After payment of the full amount of the secured creditor's debt, some $110.16 remained in the hands of the Trustee. The appellee did not seek a reimbursement of this overage, however, but agreed to let unsecured creditors divide this sum among themselves pro rata. The trustee then made his final report on September 28, 1980.

On September 29, 1980, the trial court held a hearing on the instant complaint. At that time, inasmuch as the appellant had actually received a partial payment of its debt, the trial judge ordered the amendment of the appellee's plan *nunc pro tunc* to "provide for" the appellant in that amount. The reasoning behind this decision was formalized in a memorandum opinion entered on February 5, 1981, and a judgment was subsequently issued.

## II. ISSUES

Two issues have been raised in this appeal. First, did the trial court err in amending the appellee's plan *nunc pro tunc* to "provide for" the appellant? Second, assuming that such an amendment was improper, was the appellant "provided for" in the appellee's plan, even though that plan proposed to pay it nothing?

## III. ANALYSIS OF THE FACTS AND THE LAW

The panel need not address the first issue cited above. The provisions of 11 U.S.C. § 1329(a) imply that the modification of a Chapter 13 plan may only affect claims already "provided for" under that plan. Since the panel finds that the appellant's claim was, in any case, "provided for" under Mr. Gregory's original plan, it need not explore whether the trial court had authority, outside of 11 U.S.C. § 1329(a), to work a *nunc pro tunc* amendment of that plan to reflect a later reality.

In addressing the second issue, the panel must again observe that it is without jurisdiction to treat the "good faith" objections of the appellant. Questions of this sort should have been raised at the time of confirmation and by appeal immediately thereafter. The time for appeal on the issue of good faith had long passed when the instant adversary proceeding was instituted.

Instead, the panel must answer only one question: Does a Chapter 13 plan which proposes to pay nothing to unsecured creditors "provide for" such creditors, so as to discharge their claims? This query must be answered in the affirmative.

■■■ The phrase "provided for," as it appears in 11 U.S.C. § 1328(a), is apparently derived from section 660 of the old Bankruptcy Act. 11 U.S.C. § 1060 (1976). The meaning of the term in that context may be inferred from section 646 of the Act, 11 U.S.C. § 1046 (1976), which sets forth the possible provisions of a Chapter XIII plan of arrangement. Section 646 states, in pertinent part, that "[a] plan under this chapter—(1) shall include provisions *dealing with* unsecured debts generally, *upon any terms*". (Emphasis supplied). Thus, under the Act, it would appear that a plan only had to "deal with" an unsecured debt "upon any terms" in order for the debt to be "provided for" under that plan.

Nevertheless, the panel recognizes that one basic distinction between the old Chapter XIII and the current Chapter 13 moots the effect of the above authority. With the voting procedures and more restrictive discharge found under the old Chapter XIII, the possibility of confirming a proposed zero-payment plan was practically nonexistent. Hence, the phrases "deal with" and "upon any terms," in the Chapter XIII setting, were impregnated with a tacit understanding that the discharge under section 660 would be premised upon a payment

of some kind. This is not the situation in the instant case.

Still, the panel finds no reason to interpret "provided for" to mean "provided with a benefit," as the appellant would suggest. Rather, it would seem more probable, to the panel, that Congress intended to use this phrase to mean that a plan must "make a provision for" a debt, in order for the debt to be discharged. *See generally Holder v. Elms Hotel Co.,* 338 Mo. 857, 92 S.W.2d 620 (1936).

For example, in support of its reading of the term "provided for," the appellant has argued that there is little practical difference between a plan which proposes to pay unsecured creditors nothing and a plan which does not contain any provision regarding unsecured creditors. Hence, it would argue that Congress could not have intended that a plan "provide for" a debt by paying nothing thereon. Nevertheless, the panel finds that there is a significant difference between a plan which does not acknowledge an unsecured claim and a plan which proposes to pay nothing on that claim. In the former case, the unsecured creditor has no ability to object, in a meaningful way, to the confirmation of the debtor's plan. He is not a part of the plan and, hence, he may assume that the plan will not affect the obligations owing him. In most cases where creditors are not included in a Chapter 13 plan, they are either simply overlooked, as creditors, or the debtor has intended to pay them other than through the plan. In either instance, it would be manifestly unfair to discharge such creditors' obligations upon the consummation of a plan which they could not contest, or which they had been led not to contest by the debtor's promises of payment outside the plan.

On the other hand, when a debtor proposes to pay nothing to unsecured creditors, the latter have notice of the possible discharge of their debts and may actively seek to obtain a denial of confirmation based upon a lack of good faith on the part of the debtor or upon other improprieties. Once confirmation occurs, these unsecured credi-

tors may appeal the trial court's decision. Such procedural rights are denied a creditor who is completely omitted from a Chapter 13 plan.

In examining the plan proposed by Mr. Gregory, the panel is somewhat troubled by the short term of the payments under the plan and the obvious effect of this plan in allowing the discharge of an otherwise nondischargeable obligation. The panel does not believe that Chapter 13 was meant to take the place of a bankruptcy liquidation where a Chapter 7 discharge is inadequate. Still, the shortcomings of Mr. Gregory's plan should have been examined before that plan came into effect, not after the debtor had relied upon its confirmation in beginning his "fresh start." It would hardly serve the purposes for which the federal bankruptcy laws were intended to permit a dissatisfied creditor to withhold its opinion of the practicality and fairness of a debtor's plan until after that plan has been completed. At such a late point in time, a meaningful modification of the plan is difficult, if not impossible, and the objecting creditor is in a position to circumvent the protective shield provided debtors under Chapter 13. The trial court did well in denying the appellant's complaint, even though his basis for doing so cannot be upheld at this time.

Affirmed.

HUGHES, Bankruptcy Judge, concurring:

I write separately to emphasize the narrow issue decided. When all is said and done, we construe the term "provided for" as used in 11 U.S.C. § 1328(a). Our task is not facilitated by speculating on the theoretical advantages enjoyed by a creditor who is provided for in a plan but is paid nothing. Nor is it helped by questioning an order of confirmation that is not appealed.

Appellant holds a judgment for $16,540 arising from debtor's embezzlement. The judgment would be nondischargeable under 11 U.S.C. § 523(a)(4) had the debtor filed Chapter 7 bankruptcy. However, the same judgment is dischargeable under 11 U.S.C. § 1328(a) if the debtor completes all pay-

ments under a Chapter 13 plan and if the judgment is a debt that is "provided for by the plan."

Under the plan as confirmed, unsecured creditors were to receive nothing. That plan was amended after the fact to provide for payment of $110 (less than one-half of one percent) to unsecured creditors holding claims totalling $23,400.

Appellant argued that a plan that pays nothing to unsecured creditors does not "provide for" such creditors. It read the word "provided" in the sense of supplying a benefit. The term has other meanings, however, such as "deal with" or "stipulate."

The foregoing distinction was noted by the Supreme Court of Missouri in *Holden v. Elms Hotel Co.*, 338 Mo. 857, 92 S.W.2d 620 (1936). In construing a similar use of the term, the Court stated:

> We do not understand the words "provided for" to mean "compensated for." It is common legal parlance to refer to different parts of a statute as "provisions" thereof... One definition of the word "provided," as found in Webster's New International Dictionary, is "to stipulate." It is in that sense we believe the Legislature used the word "provide for" in the exception clause.

I believe that Congress used the words "provided for" in section 1328(a) in the same sense.

Appellant was "provided for" when the debtor listed it as an unsecured creditor and stipulated in the plan what unsecured creditors receive. It is immaterial for purposes of section 1328(a), that what they receive is nothing.

I therefore concur in affirming the trial court's order holding appellant's debtor to be discharged under 11 U.S.C. § 1328(a).