**In re Betty TOMLAN, Debtor.**

**Ian LEDLIN, Trustee,
Appellant/Plaintiff,**

**v.**

**UNITED STATES of America,
Respondent/Defendant.**

**No. C–89–298–JLQ.**

United States District Court,
E.D. Washington.

July 5, 1989.

Allan Galbraith and Carlson & Drewelow, P.S., Wenatchee, Wash., for appellant/plaintiff.

Thomas Sawyer, U.S. Justice Dept., Washington, D.C., for respondent/defendant.

## ORDER REMANDING TO BANKRUPTCY COURT

QUACKENBUSH, District Judge.

This matter comes before this court on appeal from a decision rendered by the Bankruptcy Court. A hearing on said appeal was held on June 29, 1989, at Richland, Washington. Allan Galbraith appeared on behalf of appellant; Thomas Sawyer appeared on behalf of respondent. Having reviewed the record, heard from counsel, and being fully advised in this matter, this Order is intended to memorialize the court's oral decision in the hearing on said appeal.

The factual background of this case is not disputed. The debtor, Betty Tomlan, owned and operated a restaurant known as the Round Table Restaurant. She withheld income taxes and FICA taxes from her employees, but failed to pay said taxes to the IRS. Accordingly, the IRS filed liens as to some of those debts, but not all. As to that portion of the debt on which liens were filed prior to the bankruptcy, the debt was a secured debt; the remainder was unsecured. This appeal concerns only that portion of the debt which was unsecured.

On September 19, 1984, Ms. Tomlan filed a bankruptcy petition under Chapter 13, the wage-earners plan, under which the debtor offers a plan for repayment over a period generally not exceeding 3 years, of all or a portion of the unsecured debts. The debtor's original plan, submitted prior to the filing of the IRS's proof of claim, provided for full payment of what the debtor believed was the entire debt owed the IRS ($39,975), payment of $4,200 to a secured creditor, and attorney's fees to the debtor's attorney. Payments to other creditors, including the seller of the restaurant, were to be made outside the plan. However, when it became obvious that the IRS proof of claim was untimely filed, the plan was amended to eliminate any provision for payment of the unsecured claim. Instead, the plan provided that the debtor would pay 100 percent of "allowed claims" to the IRS (BR 60), thereby leaving it to the trustee and the bankruptcy court to determine what portion of the IRS claim would be paid under the plan.

On September 20, 1984, the Bankruptcy Clerk entered an Order for Meeting of Creditors, notifying creditors that they must file their claims within 90 days of October 18, 1984, or their claims would not be allowed (BR 33).[1] On January 21, 1985

---

1. Bankruptcy Rule 3002(c) requires that a proof of claim be filed within 90 days of the first

the IRS filed a proof of claim, as required by the bankruptcy code for unsecured debts, in the amount of $49,277.70, including both secured and unsecured debts (BR 5).[2] However, its proof of claim, filed 5 days after the cut-off date for such filings, was untimely. The Trustee filed an objection to the claim on May 31, 1985, wherein it challenged the claim as incorrect in amount and not served on the debtor or trustee (BR 23). The Trustee filed an amended objection on June 13, 1985, after it received a copy of the proof of claim, wherein it challenged, inter alia, that the proof of claim was untimely (BR 30).

The Bankruptcy Court determined that the unsecured IRS claim was not an "allowed" claim, because it was not timely filed. However, in a separate adversary proceeding the Bankruptcy Court held that it was nevertheless nondischargeable, because the plan did not provide for its full payment. The issue on appeal is whether the Bankruptcy Court erred when it held that a late-filed, non-allowed claim was not a dischargeable debt because it was not "provided for" in the plan. The Bankruptcy Court interpreted "provided for by the plan" to mean that

> the plan must, at the very least, provide that the debt receives the treatment required by law.... Section 1322(a)(2) requires that certain claims be paid in full in a Chapter 13 plan. Thus, with respect to such claims, this Court interprets the term "provided for by the plan" to mean provide for full payment in the plan as required by law.

meeting of creditors. Extensions of time may only be obtained by filing a motion prior to the expiration of the filing time, and for cause shown. The Bankruptcy Court does not have discretionary authority to enlarge the time after the filing period has expired absent a timely filed motion for such an extension. *In re Chirillo,* 84 B.R. 120, 122 (Bankr.N.D.Ill.1988). *See also, In re Owens,* 67 B.R. 418, 423 (Bankr.E.D. Pa.1987); *In re Pigott,* 684 F.2d 239, 243 (3rd Cir.1982); Bankruptcy Rule 9006(b)(3).

2. The proof of claim indicates a secured claim of $14,373.83, an *unsecured priority claim of* $29,833.55, and an unsecured general claim of $5,070.32.

*In re Tomlan,* 88 B.R. 302, 307 (Bankr.E. D.Wash.1988).

## ANALYSIS

Title 11, Chapter 13, of the United States Code, deals with the adjustment of debts of an individual having regular income. The debtor is required to file a plan which provides for the submission of all or a portion of his future earnings to the supervision and control of a trustee. The plan must provide for the full payment of "all claims *entitled to priority* under section 507"[3] unless the claimant agrees to a different treatment of his claim. (Emphasis added.) 11 U.S.C. § 1322(a)(2).[4] In addition, the plan may provide for the payment of all or any portion of certain non-priority claims. 11 U.S.C. § 1322(b).

The purpose of Chapter 13 is "to serve as a flexible vehicle for the repayment of part or all *of the allowed claims* of the debtor." (Emphasis added.) Sen.Rept. No. 95–989, Pub.L. 95–598, 92 Stat. 2549, 95th Cong., 2d Sess. (1978), p. 141, reprinted in U.S. Code Cong. & Admin.News 1978 at 5787, 5927. In order to effectuate this purpose, it is essential that all unsecured creditors seeking payment under the plan file a proof of claim. A date certain for such filings is crucial to the ability to determine the full extent of the debts and evaluate the efficacy of the plan in light of the debtor's assets and foreseeable future earnings. The debtor may modify the plan prior to its confirmation. 11 U.S.C. § 1323. Following notice to all parties having an interest in the plan, the court holds a hearing of any objections to its confirmation.

3. Section 507 affords special priority status to a listed category of debts, including administrative expenses, unsecured claims allowed under section 502(f) (debts which arise after an involuntary bankruptcy is filed but before a trustee is appointed, during the ordinary course of business), limited "allowed unsecured claims" for wages, salaries, commissions, or contributions to employee benefit plans, certain grain and fish claims, limited lease or rental payments made to the debtor without return performance by the debtor, and certain specified taxes.

4. It is not disputed that the United States did not agree to compromise its claim.

11 U.S.C. § 1324. With regards to allowed unsecured claims, the major requirement for confirmation is that the creditor not receive less than the amount that it would have been paid on the claim if the estate were liquidated under Chapter 7, 11 U.S.C. § 1325(a).

The debtor's plan must provide for payments to be completed within a 3–year period, unless the court approves a longer period not to exceed 5 years. 11 U.S.C. § 1322(c). When the debtor has completed making the payments called for under the plan, "the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502", except for certain exceptions which are not relevant to this appeal. 11 U.S.C. § 1328(a).

■ The Bankruptcy Court held that the tax debt was not disallowed "under Section 502" (BR 60). That portion of the Bankruptcy Court's decision is not challenged here. Therefore, the only issue before this court is whether the taxes were "provided for by the plan" within the meaning of the Bankruptcy Code. As interpreted by the Bankruptcy Court, that requires that the debt must "receive the treatment required by law," which law it interpreted to mean that the plan had to provide for full payment. *In re Tomlan*, 88 B.R. 302, 307 (Bankr.E.D.Wash.1988).

In *In re Gregory*, 705 F.2d 1118 (9th Cir.1983), the Ninth Circuit examined the meaning of "provided for" within the context of § 1328(a). The court held that "the phrase 'provided for' in section 1328(a) simply requires that for a claim to become dischargeable the plan must 'make a provision for' it, i.e., deal with it or refer to it." *Id.* at 1122. It does not require that the plan actually provide a benefit, i.e., a payment on the debt. The Court of Appeals accepted the Bankruptcy Appellate Panel's distinction between a plan which does not acknowledge an unsecured claim, and a plan which proposes to pay nothing on the claim. The critical difference is the lack of an opportunity to object in a meaningful way to confirmation of the debtor's plan, if the debt is not acknowledged in any man-

ner in the plan. *Id.* The Bankruptcy Appellate Panel further explained:

> [T]here is a significant difference between a plan which does not acknowledge an unsecured claim and a plan which proposes to pay nothing on that claim. In the former case, the unsecured creditor has no ability to object, in a meaningful way, to the confirmation of the debtor's plan. He is not a part of the plan and, hence, he may assume that the plan will not affect the obligations owing him. In most cases where creditors are not included in a Chapter 13 plan, they are either simply overlooked, as creditors, or the debtor has intended to pay them other than through the plan. In either instance, it would be manifestly unfair to discharge such creditors' obligations upon the consummation of a plan which they could not contest, or which they had been led not to contest by the debtor's promises of payment outside the plan.
>
> On the other hand, when a debtor proposes to pay nothing to unsecured creditors, the latter have notice of the possible discharge of their debts and may actively seek to obtain a denial of confirmation based upon a lack of good faith on the part of the debtor or upon other improprieties. Once confirmation occurs, these unsecured creditors may appeal the trial court's decision. Such procedural rights are denied a creditor who is completely omitted from a Chapter 13 plan.
>
> ... It would hardly serve the purposes for which the federal bankruptcy laws were intended to permit a dissatisfied creditor to withhold its opinion of the practicality and fairness of a debtor's plan until after that plan has been completed. At such a late point in time, a meaningful modification of the plan is difficult, if not impossible, and the objecting creditor is in a position to circumvent the protective shield provided debtors under Chapter 13.

19 B.R. 668 at 670 (9th Cir. BAP 1982).

Under the above rationale, it becomes clear that the Tomlan plan provided sufficient notice to the IRS that no payment

was intended to be made on the late-filed claim, to consider that claim "provided for." The IRS was fully aware that its claim was untimely. The original plan had provided for its full payment. However, the plan was later modified after the debtor received a copy of the proof of claim and discovered that it was untimely. The plan as modified provided that the debtor would pay 100 percent of "allowed claims" to the IRS. It was left to the trustee and the court to determine what portion of the IRS's claim would be allowed and, therefore, fully paid. The fact that the IRS had a full opportunity to challenge the plan and the dischargeability of its debt is evidenced by its presence before this court at this juncture.

The four courts which have addressed the dischargeability issue under similar circumstances have unanimously held that the debt is discharged. The first court to face the question of dischargeability of an untimely-filed proof of a tax claim was *In re Richards*, 50 B.R. 339 (E.D.Tenn.1985). In *Richards*, the IRS filed a late proof of claim for a penalty which the court assumed would have been entitled to priority status. The debtor's plan proposed that "[c]laims entitled to priority under 11 U.S.C. § 507 be paid in full in deferred cash payments." *Id.* at 341. The District Court, by adoption of the Bankruptcy Court's opinion, held that "a claim that is not allowed because not timely filed is discharged even though no payments are received by the creditor." *Id.* at 342. In reaching this decision, the court stated:

> The plan was not required to mention this particular claim. What claims are entitled to priority is determined from the proofs of claims that are filed.
>
> A proof of claim must be filed in order for a claim to be allowed. 11 U.S.C. § 502(a). In chapter 13 cases only allowed claims and administrative expenses are paid. *Priority under § 507 also depends on allowance of the claim.* 11 U.S.C. § 507. Thus, the IRS was required to file a proof of claim in order to be paid.

(Emphasis added). *Id.* at 341. The court distinguished between Chapter 7 liquidation cases and Chapter 13, noting that the discharge after completion of a Chapter 13 plan is broader than a Chapter 7 discharge. *Id.* Because the plan "provided for" payment of claims "entitled to priority," the court concluded that the plan provided for payment of the debt, but that it was not actually paid because the proof of claim was not timely filed. *Id.*

The next case to consider this issue was *In re Goodwin*, 58 B.R. 75 (Bankr.D.Me. 1986). In *Goodwin*, the IRS again filed a late proof of claim for a penalty for failure to collect and pay over employment taxes. The debtor's plan provided that "any and all claims of, and liabilities of the Debtors to, the IRS for taxes ... shall be satisfied in full and discharged upon the payment by the Debtors to the IRS of the full face amount *of their duly filed, proved and allowed claims."* *Id.* at 76. (Emphasis added.) The IRS contended that its claim was not provided for by the plan. In that case, as here, the debtor's plan was not filed and confirmed until after it was obvious that the IRS claim was not timely filed. Therefore, the IRS argued that its claim could not be "duly filed, proved and allowed," thus, it was not provided for. The Bankruptcy Court disagreed. It noted that the language "duly filed, proved and allowed" is mere surplusage, because the Code and Rules require claims to be duly filed and allowed in order to be paid. Citing *In re Gregory*, 705 F.2d 1118 (9th Cir. 1983), the court concluded that the IRS claim was provided for by the plan as required by § 1322(a)(2), and was therefore dischargeable following completion of the plan. In reaching its decision the *Goodwin* court noted:

> The purpose of [Chapter 13] is to grant "an individual with regular income" (11 U.S.C. § 101(27)) a fresh start, through extension and composition plans, funded out of future income. (citation omitted). For a chapter 13 plan to be successful and for the debtor to get his fresh start, the debtor and the standing trustee must know, early on, what claims must be paid. The method for determining this is

the requirement ... that unsecured claims be [timely] filed.... Failure to file, or a late filing, results in disallowance and discharge of any claim provided for by the plan upon completion of the plan under section 1328(a).

*Id.* at 77. In *In re Hunt,* 59 B.R. 718, 720 (Bankr.D.Me.1986), the Maine Bankruptcy court reaffirmed *Goodwin,* and held that a late-filed IRS proof of claim for employment taxes was a discharged debt.

The final case to address this issue is *In re Rothman,* 76 B.R. 38 (Bankr.E.D.N.Y. 1987). Citing *Richards, Goodwin,* and *Hunt,* the court held that the State Tax Commission was barred from seeking to collect a prepetition debt, where the Commission had filed a timely proof of claim for $161.69 for 1976 state taxes and the plan provided for payment of that priority tax, the debtor completed plan payments and was discharged, and subsequent to her discharge the Commission sought to collect $2,732.54 additional taxes and interest for the tax year 1976. The court held that where a taxing authority is unable to determine the full amount of the tax debt at the time of filing its proof of claim, Bankruptcy Rule 3002(c)(1) permits the filing of a motion for an extension of time. Where the creditor fails to file such a motion but permits the plan to be confirmed, it cannot later argue that the debt is not discharged. *Id.* at 41.

The United States here reiterates the argument that convinced the Bankruptcy Court that because the taxes were "entitled to priority," the only way its claim could be "provided for" in the plan, absent its consent to a compromise, was for the plan to provide for full payment. The Bankruptcy Court properly conceded that in order to *"obtain"* priority, the claim must first be allowed. *In re Tomlan,* 88 B.R. at 307. However, it distinguished "obtain" priority from "entitled to" priority. It reasoned that "for one to be 'entitled to' something necessarily implies that the object of entitlement has not yet been received." (BR 60 at 8). The court construed the language of § 1322(a)(2) as implying that the priority status under § 507 had not yet been attained. In order to be "entitled to" priority

status, the only requirement, according to the Bankruptcy Court, is that the debt be of the amount claimed and of the nature designated for priority status.

■ The flaw in the Bankruptcy Court's conclusion is that it has omitted a step in the process of obtaining the desired priority status. The first stage is potential entitlement to priority status. There is no question that potential entitlement existed here. The second stage entails performance of the steps necessary for satisfaction of the conditions precedent to obtaining priority status. The third stage is achievement of entitlement following completion of all conditions precedent. The final stage is confirmation of having obtained priority status. The Bankruptcy Court's definition of "entitled to" ignores the necessity of satisfying the conditions necessary to pass from mere potential entitlement to actual entitlement, specifically, the requirement that a priority claim must be timely filed. Both parties agree that "entitled to" encompasses the requirement that one "qualify for" it, *Black's Law Dictionary* 477 (5th ed. 1979), by satisfying all the requirements for the entitlement. For example, one is not entitled to full payment on a contract when one has not completed the performance called for in the contract, despite the fact that the potential for such entitlement existed from the moment the contract was finalized. Nor is one entitled to receive priority status if one has not met the statutorily mandated requirements, including the requirement of having filed a timely proof of claim. The mere potential right to priority status does not guarantee that such status will ultimately be achieved, where the creditor has failed to meet the conditions precedent to such status. For example, the bankruptcy code is replete with technical rules regarding perfection of secured claims which must be satisfied for a potentially secured creditor to achieve the special protection afforded that status. The law is clear and unchallenged here that the Bankruptcy Court has no discretion to allow a late-filed proof of claim. The code gives no special treatment for late filing of potential priority claims.

The IRS failed to meet that essential condition precedent to an award of priority status; therefore, it was not entitled to such status.

The Bankruptcy Code and Rules do not require that a proof of claim be filed for secured claims, due to the special nature of such claims. No such special dispensation is accorded priority claims. Under the Bankruptcy Court's and the United States' rationale, a priority claim would have the same status as a secured claim, to the extent that the creditor, although it would have to wait to collect until after the debtor was discharged, could avoid dealing with the bankruptcy court by failing to file a proof of claim at all. Because it failed to file any proof of claim, its claim would not be allowed. Because it was not allowed there would be no purpose to include it in the plan since the Trustee would not be authorized to pay any portion of it out of the debtor's assets or earnings. However, because it was not included in the plan, it would not be "provided for" in the plan, as respondent defines "provided for"; therefore, it would not be a dischargeable debt. This concept is totally inconsistent with Chapter 13's purpose of encouraging a debtor to make a fuller payment of his debts than would be required under Chapter 7, and is also inconsistent with the "fresh start" purpose of our bankruptcy laws. Only through a complete understanding of the existing debts facing a debtor can the trustee and the debtor determine whether Chapter 13 is a feasible alternative to Chapter 7 liquidation. In addition, there can never be a fresh start when creditors can avoid following the bankruptcy rules, either deliberately or through dilatoriness, but nevertheless hide in the wings ready to pounce upon the debtor just at that moment when he believes that he has finally paid his debts and regained financial stability. The Bankruptcy Court dismissed this concern on the basis that the debtor could, if he wished, avoid this unpleasant result by including the debt in the plan without a proof of claim being filed. This approach puts the burden on the debtor, rather than the creditor. This is contrary to the rule that it is the creditor's obligation to file a timely proof of claim. *In re Ryan*, 78 B.R. 175, 178 (Bankr.E.D.Tenn.1987); *Matter of Walter*, 29 B.R. 449, 451 (Bankr.S.D.N.Y.1982).

In reaching its decision that an untimely filed tax claim cannot be discharged upon completion of the plan, the Bankruptcy Court disagreed with the contrary decisions by the four other courts set forth above. The Bankruptcy Court stated as its rationale for rejecting these decisions:

> Congress provided that absent the consent of the holder of the claim to different treatment, the Court is without authority to confirm a plan which provides the priority claimant with less than full payment on the "entitled" claim. It is unlikely that Congress would give the priority-type claims status which is so important as to require 100% payment and still intend that the claimant receive nothing on the claim if the proof of claim is filed as little as five days late.

88 B.R. at 308. This rationale ignores the well-settled rule that an untimely claim cannot be allowed, and that the Bankruptcy Court has no discretion to allow such claims where no motion for an extension of time was filed prior to the running of the filing period. *Matter of Walter*, 29 B.R. 449, 451 (Bankr.S.D.N.Y.1982); *In re Owens*, 67 B.R. 418, 423 (Bankr.E.D.Pa.1986); *In re Pennetta*, 19 B.R. 794, 797 (Bankr.D.Colo.1982).

Under *Gregory*, 705 F.2d 1118, the Ninth Circuit held that a debt is provided for if the plan deals with it or refers to it, even if it provides for zero payment. The major concern of *Gregory* was that the creditor have sufficient notice to be able to contest the treatment given its debt. It is clear that the Tomlan plan, as modified, gave the IRS notice that if its claim was not allowed it would not be paid under the plan. Therefore, the unsecured IRS claim was provided for under the plan and it is a dischargeable debt.

Even utilizing the Bankruptcy Court's definition of "provided for" as meaning that the debt receive the treatment required by law, the court's conclusion that the debt be paid in full, is erroneous. The

law requires full payment of only those claims "entitled to priority." The IRS failed to meet the essential criteria of a timely-filed proof of claim to achieve full "entitled to priority" status. If the law requires no payment under the plan, it likewise requires no later payment after completion of the plan. The IRS claim had the same status as any other unsecured creditor who failed to file a timely claim. It received the full treatment required by law—no payment.

This conclusion is supported by the legislative history of the Bankruptcy Reform Act. While the legislature recognized that the "three-way tension" between general creditors, the debtor, and the tax collector necessitated a balancing of their interests, with the result that certain tax claims are afforded priority status, it stated that "unpaid taxes *accorded priority* are nondischargeable, and tax claims which are not *given priority* are ... not collectible from the debtor's post-bankruptcy assets." Sen. Rept. 95–989, Pub.L. 95–598, 92 Stat. 2549, 95th Cong., 2nd Sess. (1978), at 14, reprinted in U.S.Code Cong. & Admin.News at p. 5800. (Emphasis added.) Thus, the legislature anticipated that, in order to be nondischargeable, the taxes must actually achieve priority status. To achieve priority status, the claim must be allowed, and to be allowed it must be timely filed. 11 U.S.C. 507(a)(7).

Because the IRS's proof of claim was not timely filed, it was not allowed. Because it was not allowed, the plan did not have to provide for its full payment. The plan made reference to IRS claims, and provided for payment of only those claims which the Bankruptcy Court determined were allowed. The plan, therefore, gave sufficient notice to the IRS to enable it to seek payment under the plan and to challenge the bankruptcy court's rulings regarding whether it was an allowed claim entitled to periodic payments. As such it was "provided for" in the plan. The IRS's unsecured claim is, therefore, a dischargeable debt upon the debtor's completion of performance under the plan.

The judgment of the Bankruptcy Court is HEREBY REVERSED. This action is REMANDED to the Bankruptcy Court for disposition in accordance with this Order.

IT IS SO ORDERED.