In re Paul Gilmer ROBERT and Pamela Mae Robert, Debtors.

Bankruptcy No. 94–3–1496–BDM.

United States Bankruptcy Court, N.D. California.

Aug. 29, 1994.

Anthony C. DeLuca, San Rafael, CA, for debtors.

Michael J. Yamaguchi, U.S. Atty., Jay R. Weill, Asst. U.S. Atty., San Francisco, CA, Lori M. Mersereau, Thomas M. Rohall, Sp. Asst. U.S. Attys., Sacramento, CA, for I.R.S.

## MEMORANDUM DECISION

DENNIS MONTALI, Bankruptcy Judge.

### I. *Introduction.*

This matter came before the court on the debtors' objection to the claim of the Internal Revenue Service ("IRS"). On the stipulation of the parties, the matter was submitted on the briefs and without oral argument. For the reasons stated in this Memorandum Decision, the unsecured and priority portions of the claim of the IRS will be disallowed as untimely filed.[1]

---

1. Unless otherwise indicated, all references to Chapters, Sections or Rules are to the Bankrupt-

cy Code, 11 U.S.C. § 101, et seq. and to the

## II. *Facts.*

The facts are not in dispute and are taken both from the briefs and other documents contained in the court's file. Fed.R.Evid. 201(c). Paul Gilmer Robert and Pamela Mae Robert ("Debtors") filed a joint voluntary Chapter 13 petition on August 16, 1991. Debtors filed their petition in the Santa Rosa Division. The case was subsequently transferred to the San Francisco Division.

In their schedules of liabilities, Debtors scheduled, as secured debt, payroll taxes owed to the IRS in the amount of $5,700 and "personal" taxes owed to the IRS in an amount unknown. Debtors' schedules did not describe, or state the market value of, Debtors' property subject to the IRS's lien. Debtors did not schedule any unsecured priority taxes or unsecured general taxes.

On September 20, 1991, the Chapter 13 trustee served all parties in interest with a Notice of Bankruptcy, Meeting of Creditors, Automatic Stay, and Summary of Plan, providing notice of the date set for the meeting of creditors, the date set for hearing on confirmation of the plan and the claims bar date. The notice also clearly stated that "[c]reditors must file claims within 90 days of the meeting date in order to share in any distribution." Debtors' Memorandum, Exhibit C, ¶ 6.[2] The first meeting of creditors and confirmation hearing were set for October 21, 1991, and the claims bar date was set for 90 days later.

Due to illness, Debtors' counsel failed to appear at the October 21, 1991 meeting and hearing. The trustee requested that the case be dismissed. The court ordered the case dismissed on October 24, 1991 and served creditors with notice of dismissal on October 31, 1991.

Debtors and the trustee entered into a stipulation, approved by the court on November 7, 1991, providing that "the Order dismissing the above-captioned bankruptcy proceeding be vacated and said proceeding be reinstated effective October 21, 1991." Debtors served creditors with a Notice of Date of Meeting of Creditors and Confirmation Hearing (the "New 341 Notice") on November 21, 1991, informing creditors that a meeting of creditors and confirmation hearing would be held on December 16, 1991. The notice did not provide for a new claims bar date. On December 16, 1991, the meeting of creditors and confirmation hearing were commenced, but were continued to January 13, 1992. The case retained its original case number until it was transferred to the San Francisco Division in April 1994.

Debtors' Amended Chapter 13 Plan, filed January 16, 1992 and confirmed February 7, 1992, provided for Debtors to pay the Chapter 13 trustee $300 per month for 36 months or until all allowed claims were paid. The plan further provided that from the payments so received the trustee would pay the allowed secured claim of the IRS. Debtors' amended plan did not specifically state the amount that would be paid to the IRS under the plan. The Notice of Bankruptcy, Meeting of Creditors, Automatic Stay, and Summary of Plan served on parties in interest on September 20, 1991, and Debtors' original plan filed on September 3, 1991, both provided for payment to the IRS of $5,700.

The IRS filed a proof of claim on February 7, 1992 in the total amount of $28,485.74, claiming amounts owed for secured taxes, penalties and interest, unsecured priority taxes and interest, estimated unsecured priority taxes and unsecured general taxes, penalties and interest. On August 16, 1993, the IRS filed Amendment # 1 to its proof of claim, including the same categories of taxes, in the total amount of $25,244.65.[3]

---

Federal Rules of Bankruptcy Procedure, Rules 1001, et seq.

**2.** The original notice, contained in the court's file, is missing paragraphs four through six, which are blocked out by a carbon address window. The copy of the notice that Debtors submitted as Exhibit C to their memorandum in support of objection to the IRS's claim is complete and contains the above-quoted language.

The IRS does not dispute that it received a notice in the form set forth as Exhibit C to Debtors' memorandum. The court is satisfied that the form of notice attached to Debtors' memorandum is the same as the notice served on parties in interest in the case.

**3.** The IRS's proof of claim, filed on February 7, 1992, indicates: (a) secured taxes, penalties and interest in the amounts of $4,054.04, $311.14

On December 16, 1993, Debtors filed an objection to the IRS's claim and amended claim, on the grounds that they were not timely filed and that Debtors did not owe any amount to the IRS.

### III. Issues.

A. **Whether a new claims bar date was established when the case was reinstated.**

B. **Whether the court possesses the authority in a Chapter 13 case to enlarge the time to file a proof of claim after the deadline of Rule 3002(c), absent timely filing by the creditor of a motion to extend.**

C. **Whether the secured claim of the IRS should be allowed, even though late-filed.**

### IV. Discussion.

A. *No new claims bar date was established in this case.*

█ Rule 3002(c) requires that in a Chapter 13 case, "a proof of claim shall be filed within 90 days after the first date set for the meeting of creditors...."[4] Extensions of this deadline may only be obtained by filing a motion prior to expiration of the filing time, and for cause shown. Rule 3002(c)(1). *In re Tomlan*, 102 B.R. 790, 791–92 fn. 1 (Bankr. E.D.Wash.1989), *aff'd, per curiam*, 907 F.2d 114 (9th Cir.1990).

The IRS asserts that because the case was dismissed prior to the claims bar date and then reinstated by the court's order vacating the dismissal, "a 'new' bankruptcy case was, in essence, begun by the debtors." IRS Response, p. 4. The IRS states that evidence of this "new" bankruptcy is the fact that Debtors issued the New 341 Notice. The IRS argues that December 16, 1991 constituted a *new* hearing date, not a continuance of the original October 21, 1991 date, and that the time to file claims should be measured from December 16, 1991. *Ibid.*

The IRS's position rests, in part, upon the IRS's internal procedures. Pursuant to its standard practices, the IRS closed its bankruptcy file for Debtors when the IRS received the order of dismissal and opened a new file and computed all administrative deadlines when the IRS received the New 341 Notice. The IRS calendared the claims bar date 90 days after December 16, 1991 and maintains that its original claim filed on February 7, 1992 was timely.[5]

Debtors urge, and the court agrees, that calculation of the claims bar date should be measured from the first meeting of creditors scheduled on October 21, 1991. The court is not persuaded that a "new" bankruptcy case was commenced when the court vacated dismissal of the case. The order stated that the case was "reinstated." To "reinstate a case" has been defined as "[t]o place case again in same position as before dismissal." *Black's Law Dictionary* 1287 (6th ed. 1990), citing *United States v. Green*, 107 F.2d 19, 22 (9th Cir.1939). The file was not assigned a new case number. The New 341 Notice did not state a new claims bar date, and the date was

and $1,161.49, respectively; (b) unsecured priority taxes and interest in the amounts of $12,953.88 and $2,839.44, respectively; (c) estimated unsecured priority taxes in the amount of $1,642.15; and (d) unsecured general taxes, penalties and interest in the amounts of $616.67, $4,479.69 and $427.24, respectively. Amendment # 1 to the IRS's claim, filed on August 16, 1993, indicates: (w) secured taxes, penalties and interest in the amounts of $4,054.04, $311.14 and $1,161.49, respectively; (x) unsecured priority taxes and interest in the amounts of $11,552.03 and $2,595.13, respectively; (y) estimated unsecured priority taxes in the amount of $895.72; and (z) unsecured general taxes, penalties and interest in the amounts of $616.67, $3,631.19 and $427.24, respectively.

4. Rule 3002(c) relates to the time for filing *unsecured* claims. *See* Rule 3002(a). Here, the IRS asserts a secured tax claim, as well as unsecured priority and unsecured general tax claims. The IRS's secured claim is discussed in Section IV. C., *infra.*

5. The IRS points out that the docket for the case includes an entry for a new claims bar date on April 13, 1992. The IRS does not mention, however, that that date is incorrect in as much as it measures 90 days from the *continued* meeting of creditors on January 13, 1992. The IRS asserts that the bar date should be measured from the meeting of creditors on December 16, 1991. IRS Response, p. 5, lines 13–15. Moreover, the IRS does not claim that it relied on the entry in the docket in filing its claim on February 7, 1992.

not extended by court order. The IRS did not move to extend the filing time prior to its expiration as it could have. *See* Rule 3002(c)(1). The court is satisfied that the December 16, 1991 meeting and hearing were continuances and that the bar date was 90 days after October 21, 1991. The IRS's proof of claim and amendment were not timely.[6]

**B.** ***The court may not extend the deadline of Rule 3002(c) in a Chapter 13 case.***

**1.** ***In re Tomlan, controlling Ninth Circuit authority, does not permit the court to extend the deadline.***

■ The IRS argues that, even if the court believes the bar date should be calculated from October 21, 1991, the court has "equitable powers" to permit the IRS to file late. The court disagrees. The IRS ignores contrary Ninth Circuit authority on point. *In re Tomlan, supra,* 907 F.2d 114 (9th Cir.1990) (per curiam), affirming 102 B.R. 790 (Bankr.E.D.Wash.1989); *In re Coastal Alaska Lines, Inc.,* 920 F.2d 1428, 1432–33 (9th Cir.1990) (the court holding, in a Chapter 7 case where sections 726(a)(2) and 726(a)(3) were at issue, "the bankruptcy court cannot enlarge the time for filing a proof of claim unless one of the six situations listed in Rule 3002(c) exists"). *See also* Rule 9006(b)(3).

The IRS relies on the *en banc* decision *In re Hausladen,* 146 B.R. 557 (Bankr.D.Minn. 1992), in support of its argument that even if its claim was not timely filed, it may still be allowed. As was decided in *Hausladen,* the IRS argues that its late-filed tax claim must be allowed because lateness is not a ground for disallowance under section 502(b). The IRS refers to section 726 (as did the *Hausladen* court), which provides for treatment of untimely claims in Chapter 7 cases but does

not disallow claims on the basis of untimeliness. The IRS would have this court decide, as was decided by the *Hausladen* court, that section 502 and Rule 3002 should not be read together and that section 502 provides the guidelines to *allow* a claim and Rule 3002 a basis for differing *treatment* of a claim under a Chapter 13 plan. *In re Hausladen, supra,* 146 B.R. at 560.

The IRS's position is inconsistent with the Ninth Circuit opinion in *In re Tomlan, supra.* In *Tomlan,* the district court considered whether the bankruptcy court had erred in holding that a late-filed, non-allowed tax claim was not a dischargeable debt because it was not "provided for" in the Chapter 13 plan. *Tomlan,* 102 B.R. at 792. The district court held, and the Ninth Circuit agreed[7], that in a Chapter 13 case the IRS must timely file proof of its unsecured claims in order to obtain priority status, stating:

> "[the Bankruptcy Court's] rationale ignores the well-settled rule that an untimely claim cannot be allowed, and that the Bankruptcy Court has no discretion to allow such claims where no motion for an extension of time was filed prior to the running of the filing period." [Citations omitted.] *Id.* at 796.

The *Tomlan* court found that the Code gives no special treatment to late-filed potential priority claims. *Id.* at 795.

The IRS's position also ignores *In re Osborne,* 159 B.R. 570 (Bankr.C.D.Cal.1993), *aff'd without opinion,* 167 B.R. 698 (9th Cir. BAP 1994), which rejected *Hausladen* "both under a legal analysis and from a policy standpoint" (*id.* at 578), and a number of other recent decisions that have rejected *Hausladen.*[8]

**2.** ***Pacific Atlantic is distinguishable from the present case and does not overrule Tomlan.***

While this matter was under submission, the Ninth Circuit handed down its decision in

---

6. It would appear, therefor, that the IRS should reconsider its internal procedures so that reopened cases, and those where dismissals are vacated, are not carelessly treated as new cases.

7. The Ninth Circuit stated that it adopted as its own "the excellent opinion of Judge Quackenbush below...." *Tomlan,* 907 F.2d at 114.

8. *See, e.g., In re Zimmerman,* 156 B.R. 192 (Bankr.W.D.Mich.1993) (concluding that *Hausladen* was wrongly decided); *In re Bailey,* 151 B.R. 28 (Bankr.N.D.N.Y.1993) (rejecting *Hausladen*); *In re Turner,* 157 B.R. 904 (Bankr.N.D.Ala.1993) (rejecting *Hausladen* and following *Bailey* and *Zimmerman*).

*In re Pacific Atlantic Trading Co. (United States of America v. Towers)*, 33 F.3d 1064 (9th Cir.1994) (hereinafter *"Pacific Atlantic"*). In *Pacific Atlantic*, the court considered whether the IRS's tax claim in a Chapter 7 case retained its priority status under section 507(a)(7) and its first position in the order of distribution under section 726(a)(1), even though the IRS did not file its proof of claim until after the bar date. The court concluded that sections 501 and 502 allowed the IRS's priority claim, regardless of when proof of the claim was filed, and that timeliness of a priority claim does not affect its entitlement to first distribution. *Id.* at 1066–1067. The court reasoned that the time limit set forth in Rule 3002(c) does not disallow a late claim, but rather that Rule 3002(c) simply divides claims into two categories, timely and late, for purposes of distribution under section 726. *Id.* at 1067. The court did not decide whether a priority creditor who filed its proof of claim after distribution from and closure of the estate may receive priority treatment. *Id.* at 1068. Nor did the court decide, on the facts before it, that a tardy, non-priority, general unsecured claim should be allowed.[9]

The facts and reasoning of *Pacific Atlantic* arose in the context of a Chapter 7 case, and the rule stated therein must be limited to Chapter 7 cases because the court addressed distribution of priority claims under section 726. This is a Chapter 13 case, where the policy considerations, goals and distribution scheme are fundamentally different. As noted by the *Tomlan* court:

"The purpose of Chapter 13 is 'to serve as a flexible vehicle for the repayment of part or all of *the allowed claims* of the debtor.' (Emphasis added.) [Citation omitted.] In order to effectuate this purpose, it is essential that all unsecured creditors seeking payment under the plan file a proof of claim. A date certain for such filings is crucial to the ability to determine the full extent of the debts and evaluate the effica-

cy of the plan in light of the debtor's assets and foreseeable future earnings." *Tomlan*, 102 B.R. at 792.

In contrast, the goal of the distribution scheme in Chapter 7 liquidations is to ensure that all parties have an opportunity to collect from the estate's limited assets. Treatment of creditors' claims in Chapter 7 is automatically provided for under section 726, whereas in Chapter 13 creditors' claims are treated under the plan. The *Pacific Atlantic* court did not mention *Tomlan*, much less overrule it. This court concludes that *Tomlan* remains the controlling authority in the Ninth Circuit concerning the necessity of filing unsecured priority and non-priority claims in a Chapter 13 case within the time limit imposed by Rule 3002(c).

In deciding that priority creditors must timely file proofs of claim, the *Tomlan* court took into account the Chapter 13 purpose of encouraging the debtor to make fuller payments to creditors than would be required under Chapter 7 as well as providing the debtor with a "fresh start" after plan completion. *Tomlan*, 102 B.R. at 796. The court determined that these policies would be undermined if the court interpreted the Code and the Rules to afford a priority claim the same status as a secured claim. *Ibid.* The court observed:

"Only through a complete understanding of the existing debts facing a debtor can the trustee and the debtor determine whether Chapter 13 is a feasible alternative to Chapter 7 liquidation. In addition, there can never be a fresh start when creditors can avoid following the bankruptcy rules, either deliberately or through dilatoriness, but nevertheless hide in the wings ready to pounce upon the debtor just at that moment when he believes that he has finally paid his debts and regained financial stability." *Ibid.*

The foregoing rationale is not applicable in a Chapter 7 liquidation.[10]

---

9. Thus, *Pacific Atlantic* would provide no support for an argument by the IRS that its claim for unsecured general taxes, penalties and interest in the approximate amount of $4,675 (*see supra*, note 3) should be allowed.

10. Indeed, the Ninth Circuit decisions in *Pacific Atlantic* and *Tomlan* both promote the "fresh start" purpose of the bankruptcy laws. In a Chapter 13 case, a debtor's "fresh start" is furthered by imposing a fixed deadline for filing claims so that the debtor, the trustee and the

### C. The secured claim of the IRS will be allowed, even though late-filed.

While not specifically addressed in Debtors' objection, the briefs submitted by both parties raised the issue of whether the secured claim asserted by the IRS should be allowed, even though filed after the bar date. The IRS asserts, and Debtors concede, that a secured claim need not be filed. Debtors state that the IRS has a valid secured tax claim in the amount of $5,297.66. Debtors' Memorandum, p. 6.[11] The IRS states that its secured claims total $11,053.34. IRS Response, p. 7.[12]

The court concludes that the IRS's secured claim should be allowed, even if the IRS did not timely file a proof of claim. In a Chapter 13 case, Rule 3002(a) does not require filing of a proof of claim by a creditor asserting a secured claim. Advisory Committee Note to Rule 3002 ("[a] secured claim need not be filed or allowed under § 502 or § 506(d) unless a party in interest has requested a determination and allowance or disallowance under § 502"); *In re Rome,* 162 B.R. 872, 875 (Bankr.D.Colo.1993) ("the Chapter 13 Trustee is bound to distribute funds to secured creditors in accordance with a confirmed plan even absent a proof of claim being timely filed"). Because Debtors scheduled secured debt owed to the IRS in the amount of $5,700 and Debtors' confirmed plan provides for payment of the IRS's allowed secured claim in the amount of $5,700, the IRS's secured claim shall be allowed in the amount of $5,700.

### V. Disposition.

The foregoing constitute the court's findings of fact and conclusions of law in accordance with Rule 7052(a). The IRS's proof of claim and the amendment thereto are disallowed as untimely filed claims. The IRS's secured claim is allowed in the amount of $5,700.

A separate order embodying the terms of this decision will be entered herewith.

court may evaluate the feasibility of the debtor's "wage earner" plan and the debtor may be provided with the certainty that no unexpected claims will surface after discharge. Untimely unsecured tax claims will be discharged once the plan is consummated. 11 U.S.C. § 1328(a). In a Chapter 7 case filed by an individual, the debtor's "fresh start" is enhanced by permitting late-filed priority claims to be paid, rather than saddling the debtor with non-dischargeable liabilities.

11. Debtors support their assertion with a copy of a preliminary title report dated February 14, 1994, relating to Debtors' residence, which shows (a) a Federal tax lien in the amount of $5,297.66 recorded on March 22, 1991; (b) a Federal tax lien in the amount of $3,682.24 recorded on September 10, 1991; and (c) a Federal tax lien in the amount of $15,998.71 recorded on September 12, 1991. Debtors assert that the liens in the amounts of $3,682.24 and $15,998.71 were recorded post-petition in violation of sec-

tion 362 and are therefore void. The court agrees.

12. The IRS does not state how this amount was calculated. The IRS's proof of claim, filed February 7, 1992, indicates secured taxes, penalties and interest in the amounts of $4,054.04, $311.14 and $1,161.49, respectively. Amendment # 1 to the IRS's proof of claim, filed August 16, 1993, also asserts secured taxes, penalties and interest in the same amounts. The description of the secured claims is identical in the original proof of claim and Amendment # 1, including with respect to kind of tax, tax period, date tax assessed, tax due, penalty to petition date, interest to petition date, date notice of tax lien filed and location of filing. It appears that the IRS may be erroneously doubling the amount of its secured claim by counting twice the same secured taxes, penalties and interest asserted in the proof of claim and Amendment # 1 to the claim ($4,054.04 + $311.14 + $1,161.49 × 2 = $11,053.34).