In re Carlys K. KRUEGER, aka Carlys Kyle Krueger, and Martha Lou Krueger, dba Krueger's Entertainment, Debtors.

Carlys K. KRUEGER, aka Carlys Kyle Krueger, and Martha Lou Krueger, Plaintiffs,

v.

GREAT PACIFIC MONEY MARKETS, INC., Jack Winer, Domus Equities, Inc., A California Corporation, Golden Pacific Trust Deed Services, A California Corporation, Defendants.

Bankruptcy No. SAX 86–03717 JR.
Adv. No. SA 86–0845 JR.

United States Bankruptcy Court,
C.D. California.

Feb. 6, 1987.

Burton H. Ward, La Habra, Cal., for debtors/plaintiffs.

Gregory L. Bosse, Santa Ana, Cal., for defendants.

## MEMORANDUM OPINION

JOHN E. RYAN, Bankruptcy Judge.

On October 1, 1986, debtors lost their principal residence by foreclosure sale. On October 10, 1986, debtors filed this adversary proceeding to set aside the foreclosure sale and cancel the trustee's deed upon sale. The defendants in the adversary proceeding are Great Pacific Money Markets, Inc. and its president, Mr. Jack Winer, and Domus Equities, Inc. and Golden Pacific Trust Deed Services, the entities which conducted the foreclosure sale. A hearing was held on January 8, 1987, at which time Great Pacific Money Markets, Inc. ("Great Pacific") appeared as the foreclosing creditor and purchaser of debtors' home in foreclosure. I must determine if this court has the jurisdiction to set aside the foreclosure sale and if so, should the sale be set aside.

## STATEMENT OF FACTS

The relevant and material facts in this case are not in dispute. On July 9, 1986, debtors filed a voluntary Chapter 13 bankruptcy petition. The filing stopped a scheduled foreclosure sale on the debtors' home scheduled for July 10, 1986. Great Pacific was the foreclosing creditor pursuant to a promissory note in the principal amount of $80,000. The § 341(a) meeting was held on August 14, 1986. Attorney Goldstein, an

associate at the law office of Burton H. Ward, Inc., appeared on behalf of debtors and Mr. Winer represented Great Pacific. During the § 341(a) hearing, the Chapter 13 trustee asked Mr. Goldstein to amend the Chapter 13 plan to provide for payment to the Orange County Tax Collector, reduced attorney's fees, and satisfaction of the Great Pacific note in 1988 by sale or refinance of the property. Before the confirmation hearing on August 18, 1986, attorney Ward handed the trustee papers purporting to be the required amendments to the plan. At the time, it was this court's practice to excuse debtor's counsel from appearing at the confirmation hearing if there was no objection to confirmation by the trustee or any creditor.

When Judge Pagter called debtors' case, debtors were not present or represented by counsel and Mr. Winer appeared for Great Pacific. The trustee informed the court that upon further review of the purposed amendments, they were unsatisfactory. Also, there were other reasons to continue the proceeding. Accordingly, Judge Pagter continued the matter to September 15, 1986. He expressed concern that there be enough time for debtors' counsel to notice the amended plan and said "You may give him (Mr. Goldstein) a call and make sure he gets it out."

No notice of the continued hearing was given to debtors or their counsel. In testimony before me, the Trustee stated that she thought Mr. Winer was an attorney and that the court's order to give notice was directed at him. She further indicated that her general practice when instructed to give notice was to make a notation on her calendar. No notation was made. Neither the debtors nor their counsel appeared at the September 15 hearing. Upon the trustee's motion, the case was dismissed because debtors were behind on a payment to the trustee, no amended budget had been prepared, and neither debtors nor their counsel were in attendance.

On September 17, 1986, the trustee sent debtors a speed letter informing them that the case had been dismissed and returning the payment which had been received shortly after the September 15 hearing. On September 18, 1986, the trustee sent notice of a dismissal order to debtors and their counsel and on September 23, 1986, all creditors were notified of the dismissal. Debtors received the speed letter from the trustee on September 18, 1986. Up until that time, they had no idea there was any problem with their Chapter 13 case. They immediately called attorney Ward's office. They were told Mr. Ward was on vacation and were instructed to bring the letter to the office, which they did. Mr. Ward's secretary informed Mr. Goldstein about debtors' call. In his declaration, Mr. Goldstein indicates that he attempted to contact the trustee many times without success. On September 24, 1986, he sent a letter to the trustee informing her that his office had not received notice of the continued hearing, and recommending a stipulation to set aside the dismissal order. The trustee indicated that she would not oppose a motion to vacate the dismissal.

Unbeknownst to debtors or their counsel, the foreclosure sale had been rescheduled from July 10, 1986, to August 14, 1986, then to August 26, 1986, and then to October 1, 1986. According to Mr. Laws, an employee of defendant Golden Pacific Trust Deed Services, the entity conducting the foreclosure sale, the date of the sale was announced each time at the time and place last set for the sale in accordance § 2924(g) of the California Civil Code. The foreclosure sale was conducted on October 1, 1986, and Great Pacific purchased debtors' home with a credit bid. On October 4, 1986, Mr. Winer called debtors and advised them that the foreclosure sale had occurred and requested a voluntary turnover of the home. On October 6, 1986, Mr. Ward appeared before Judge Elliott on an ex parte hearing to vacate Judge Pagter's order of dismissal and to void the foreclosure sale. Judge Elliott reinstated the bankruptcy case effective September 15, 1986, and continued the proceeding on the foreclosure sale.

Debtors claim that their equity in the property is $49,000. Great Pacific contends that the equity is less than this figure. In any event, debtors will lose most of what they have if the foreclosure sale is not unwound. Debtors' plan provides for a 100% distribution to creditors. They have made all payments to the trustee and secured creditors through November. They are prepared to make the additional payments to the secured creditors upon my determination that they own their home.

## DISCUSSION

Debtors contend that (1) the order of Judge Pagter is void; (2) the bankruptcy court is a court of equity and has the power to set aside the foreclosure sale and cancel the trustee's deed upon sale; and (3) Rule 60(b) of the Federal Rules of Civil Procedure is applicable in this proceeding through Bankruptcy Rule 9024 and permits this court to correct a mistake or inadvertence or excusable neglect by debtors or their attorneys. Great Pacific responds that (1) the court lacks subject-matter jurisdiction regarding debtors' home; (2) the court does not have equity power to set aside the foreclosure sale; (3) the proceeding is moot because debtors' failed to obtain a stay of the foreclosure sale pending an appeal of the trial court's dismissal; and (4) the sale occurred because of the negligence of debtors' attorney.

With respect to their first contention, debtors state that Judge Pagter's order is void because § 1307(c) of the Bankruptcy Code provides for dismissal only after notice and a hearing. The order of Judge Pagter dismissing debtors' case was rendered at the continued hearing of a properly noticed hearing on confirmation held on August 14, 1986. However, neither debtors nor their attorney were informed of the continued hearing date of September 15, 1986, because they were not in attendance at the August 14 hearing and they were not given notice of the continued hearing date by Mr. Winer. On October 6, 1986, Judge Elliott vacated Judge Pagter's dismissal order. His order does not specify the basis for his decision. He may have viewed Judge Pagter's order as void because debtors did not receive notice of the continued hearing. In any event, his order reinstated the case effective September 15, 1986.

■ Is the foreclosure sale affected by Judge Elliott's order? I don't think so. The foreclosure sale proceeded in accordance with California law. There was no violation of the automatic stay because the foreclosure sale took place after Judge Pagter's dismissal order and before Judge Elliott's reinstatement order. Judge Elliott's order cannot give retroactive effect to the automatic stay and thereby cause the foreclosure sale to be a violation of the automatic stay. Therefore, the foreclosure sale is not affected by Judge Elliott's action.

Debtors next argue that Rule 60(b) grants me authority to correct orders entered as a result of mistake, inadvertence, surprise, excusable neglect, or extrinsic fraud. Judge Elliott did this when he vacated Judge Pagter's dismissal order. Unfortunately, Judge Elliott's action does not and cannot give debtors the relief they want, which is abrogation of the foreclosure sale.

Debtors' last resort is the equity power of this court. A bankruptcy court is a court of equity. Section 105(a) of the Bankruptcy Code provides that "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title". This action to set aside the foreclosure sale is equitable in nature. As the court in *In re Global Western Development Corp.*, 759 F.2d 724 (C.D.Ca.1985), states

> As courts of equity, bankruptcy courts 'will look through the form to the substance of any particular transaction and may contrive new remedies where those in law are inadequate....' (Citations omitted). Substantial right and justice, rather than technical form, control. (Citations omitted). *Id.* at 727.

The questions I must answer are (1) do I have the equitable power to unwind the

foreclosure sale and (2) if so, should I? Debtors do not cite a single case in which a bankruptcy court has unraveled a foreclosure sale and had the appeal upheld. Great Pacific cites a number of cases in support of its position. However, debtors argue persuasively that each case is different from their situation.

Great Pacific asserts that this court lacks subject matter jurisdiction regarding debtors' home. It cites *In re Ghosh*, 38 B.R. 600 (E.D.N.Y.1984), for this proposition. In that case the bankruptcy court lifted the automatic stay permitting the foreclosure sale to take place. The property was purchased by a third party at the foreclosure sale. After the sale but before the transfer of title, debtor sought to have his mortgage reinstated so that he could cure the default through a Chapter 13 plan. The court held that once the legal and equitable interests of the debtor are terminated by state law, the right to reinstate a mortgage is lost. The facts in *Ghosh* are distinguishable from debtors' situation. The foreclosing creditor in *Ghosh* did nothing wrong; his hands were clean. Furthermore, the debtor had his day in court and lost fair and square; due process was not an issue.

Debtors argue that they did not have their day in court. If they had been properly notified of the September 15 hearing, they would have informed the trustee that a cashier's check was in the mail to her (which was the case). Also, the confusion on the amendments to their plan could easily have been resolved. There is every reason to believe that Judge Pagter would have granted a continuance under these circumstances so that the trustee and debtors could have resolved their differences. This court must also shoulder some responsibility for what happened because the policy then was to allow attorneys to absent themselves from the confirmation hearing if the trustee indicated everything was in order. This tragedy would not have happened but for this lax policy. The reason debtors and their counsel were not notified of the continued date was Mr. Winer's failure to give notice. After reading a transcript of the hearing and listening to the testimony of the trustee, I am convinced that Judge Pagter instructed Mr. Winer to give appropriate notice. Mr. Winer may have misunderstood his responsibility. In any case, his failure to give notice set in motion events with catastrophic consequences for debtors. Accordingly, he cannot claim to be an innocent party to the transaction. He benefits as the purchaser of debtors' home if the foreclosure sale stands. On these facts, *Ghosh* is distinguishable.

Section 541(a)(1) of the Bankruptcy Code provides that property of the estate includes all legal and equitable interests of debtor in property as of the commencement of the case. I am persuaded that a foreclosure sale based on the improper conduct of the foreclosing creditor does not terminate the equitable interests of the debtor to unwind the foreclosure sale when the purchaser is the foreclosing creditor. Since, under the circumstances of this case, debtors have an equitable interest in their home, this court has the jurisdiction to unravel the foreclosure sale and revert title to debtors.

Great Pacific next argues that this court does not have the power to set aside a foreclosure sale which has been completed. In support of its position, Great Pacific cites *In re Shaw*, 16 B.R. 875 (9th Cir. BAP 1982); *In re Grundstrom*, 15 B.R. 832 (Bankr.Mass.1981). In *Shaw*, the automatic stay terminated by order of the court after a period of 180 days. The foreclosing creditor reminded debtor that he needed to get an extension or the foreclosure sale would proceed. The foreclosure sale took place before debtor obtained a hearing to extend the automatic stay. The Bankruptcy Appellate Panel cited *Hardt v. Kirkpatrick*, 91 F.2d 875 (9th Cir.1937), *cert. denied* 303 U.S. 626, 58 S.Ct. 762, 82 L.Ed. 1088 (1938), as controlling precedent. *Hardt* is a pre-Bankruptcy Code case. In *Hardt*, the court resorted to general bankruptcy law to determine if there was a basis for relief and relied on *Heffron v.*

West Loan & Building Co., 84 F.2d 301 (9th Cir.1936), and other cases for the proposition that absent facts requiring interference, the court should not disturb a foreclosure sale conducted in accordance with the agreement of the parties. *Id.* at 878.

Again, debtors' situation is different. There is reason for this court to intervene. Judge Pagter did not have all the parties before him when he dismissed the case. Debtors and their counsel were not at the September 15 hearing because the foreclosing creditor failed to give notice. Due process is the underpinning of judicial fairness and should never be swept aside lightly. In *Shaw,* the foreclosing creditor did nothing wrong. The court entered its order terminating the automatic stay with the debtor in attendance and properly represented. *Shaw* and *Hardt* presented no due process issue.

In *Grundstrom, supra,* the court granted the foreclosing creditor relief from the automatic stay. However, it gave the debtor additional time to propose adequate protection for the creditor. When the debtor failed to offer adequate protection, the foreclosure sale took place. The debtor moved for reconsideration to set aside the valid foreclosure sale. The court stated that "[u]nless an order approving a sale of property of the estate is stayed pending appeal, the sale to a good faith purchaser shall not be affected by the reversal of such order on appeal." 15 B.R. at 834. Since no appeal was taken or stay requested, any request for reconsideration was moot. The court went on to say "[m]oreover, since the debtors have not challenged the good faith of the purchaser at foreclosure, nor [raised] any irregularities about the foreclosure sale ... it is beyond this court's power to now set aside what has been rightfully and legally completed." *Id.* at 834. *Grundstrom* is distinguishable. Great Pacific is not a good faith purchaser because Mr. Winer failed to give proper notice of the continued hearing. This was the destructive seed which took root and spawned debtors' misfortune. *Grundstrom* suggests that the bankruptcy court can intervene and vacate a foreclosure sale to right the misdeeds of a foreclosing creditor. Certainly, section 105 of the Bankruptcy Code and the bankruptcy court's historic equity power provides ample authority to support this view.

Great Pacific further contends that this proceeding is moot because debtors failed to obtain a stay of the foreclosure pending an appeal of the dismissal of the bankruptcy case. Debtors' attorney had obtained the trustee's commitment to approve the reinstatement of the bankruptcy case. Great Pacific asserts that the actions of debtors' attorney constitute negligence and foreclose debtors from relief in this matter. I do not have to determine if debtors' counsel acted negligently. I do need to decide if the failure to take certain actions, e.g. file an ex parte motion to stay the order of dismissal pending appeal or any foreclosure sale, absolves Mr. Winer of his failure to give notice of the continued hearing. Debtors and their attorney did not know the foreclosure sale had been rescheduled to October 1, 1986. Debtors' attorney assumed he had time to get the court to reinstate the case without additional actions. Mr. Winer's failure to give notice was the principal cause of the foreclosure sale without debtors having due process. Asserting that debtors' attorney should have anticipated the risk of immediate foreclosure does not erase the foreclosing creditor's culpability in this matter or the taint of the foreclosure sale. I will not cause debtors to lose their home because their attorney may not have done everything possible to protect their home from foreclosure. I do not mean to suggest that the representation these debtors received was adequate. In my view, it was not. But, debtors should not bear the cost when the foreclosing creditor does not have clean hands.

Based on my review of the legal arguments presented by counsel and a review of the facts and pleadings in this proceeding, I find that I have jurisdiction over debtors' home and Great Pacific. If I were to deny the relief requested by debtors,

they would lose their home innocent of any wrongdoing and without due process. In addition, Great Pacific would benefit at debtors' expense despite being the principal cause for debtors' failure to have their full day in court. This would be an untenable result. Despite the precedent to the contrary, this case is factually dissimilar. Therefore, I am vacating the foreclosure sale.

Separate findings of fact and conclusions of law with respect to this ruling are unnecessary. The within memorandum opinion shall constitute my findings of fact and conclusions of law.