**In re William J. THOMAS and Stephanna F. Thomas, Debtors.**

**G.E. CAPITAL MORTGAGE SERVICES, INC., Movant,**

v.

**William J. THOMAS and Stephanna F. Thomas, Respondents.**

Bankruptcy No. 94–10498–PHX–SSC.

United States Bankruptcy Court, D. Arizona.

Dec. 12, 1995.

William J. Thomas, Stephanna F. Thomas, Chandler, Arizona, Pro Se.

Rex C. Anderson, Shapiro & Sutton, Phoenix, Arizona, for G.E. Capital Mortgage Services, Inc.

Ralph McDonald, Phoenix, Arizona, Chapter 13 Trustee.

## MEMORANDUM DECISION

SARAH SHARER CURLEY, Bankruptcy Judge.

### Preliminary Statement

This matter comes before this Court on an "Expedited Motion for Reconsideration Re: Court Order of May 22, 1995," concerning the trustee's sale of certain real property located at 2713 West Gila Lane, Chandler, Arizona, filed by WILLIAM J. THOMAS AND STEPHANNA F. THOMAS (the "Debtors"), and the "Motion for Relief from the Automatic Stay and to Complete Eviction Proceedings Against the Debtors" filed on May 18, 1995 by G.E. Capital Mortgage Services, Inc. ("G.E. Capital").

With respect to the Debtors' May 22 Motion for Reconsideration, G.E. Capital filed its response on May 31, 1995. The Debtors then filed their memorandum of law on June 1, 1995; and on June 2, 1995, G.E. Capital filed its responsive memorandum of law.

With respect to the May 18 Motion for Relief from Stay filed by G.E. Capital, the Debtors filed their objection to said Motion on May 22, 1995 and their "Declaration of Debtors' Facts and Circumstances constituting their objections to Motion for Relief from Automatic Stay" on June 5, 1995.

On June 6, 1995, the Debtors also filed a motion for summary judgment as to all motions before this Court and asked for a "judgment of contempt" against Shapiro & Sutton, counsel for G.E. Capital, for its failure to comply with a court order concerning discovery, *Fed.R.Civ.P.* 26(f) conferences, and other procedural matters.

On June 8, 1995, this Court conducted a hearing on the Debtors' Motion for Reconsideration and G.E. Capital's May 18 Motion for Relief from the Stay.[1] This Court then took the matters under advisement.

This constitutes this Court's findings of fact and conclusions of law pursuant to Rule 7052, *Rules of Bankruptcy Procedure* ("RBP"). This is a "core" proceeding, and this Court has jurisdiction over this matter. 28 U.S.C. §§ 1334 and 157.

*Factual Discussion*

The Debtors are experienced in the bankruptcy area. The Court docket reflects that they filed their first petition, a Chapter 13, in 1989 which was assigned Case No. 89–05083–PHX–RGM and converted to a Chapter 7 on April 18, 1990. The Debtors received their discharge on August 6, 1990. The Debtors filed a *second* Chapter 13 petition on February 6, 1992, which was assigned Case No. 92–01469–PHX–GBN, and dismissed on September 21, 1993. The case was closed on January 20, 1994. The Debtors filed this case, their *third* Chapter 13 proceeding, on November 29, 1994, which was assigned Case No. 94–10498–PHX–SSC.

On December 23, 1994, the Debtors filed all of their schedules, their statement of affairs, and their Chapter 13 plan in this case. Four days later, on December 27, 1994, the Debtors filed their master mailing list ("MML"). However, the MML was misplaced by the Clerk's Office.[2]

The Debtors concede that they met with the Chapter 13 Trustee on January 11, 1995.[3] At that time, the Chapter 13 Trustee advised the Debtors that their case had already been, or was about to be, dismissed for a failure to provide the MML to the Court and that the Debtors needed to take immediate action to reinstate their case.

As of January 11, 1995, the Debtors were aware of two critical points: (i) that they needed to be diligent in their review of their case file; and (ii) that they needed to take prompt action, if necessary. The Debtors' prior bankruptcy proceedings, which remained pending for a prolonged period of time, further reflect their sophistication in the bankruptcy area.

Prior to the filing of their bankruptcy petition, the Debtors had failed to make a number of payments to G.E. Capital.[4] The default had caused the trustee under the deed of trust to issue a notice of trustee's sale in August, 1994, which notice was forwarded to the Debtors. The trustee's sale was sched-

---

1. The Court also conducted a hearing on Shapiro & Sutton's emergency motion regarding certain litigation pending in the Arizona Federal District Court. The Court rendered a decision on this matter at the time of the June 8 hearing.

2. The MML was filed at the time the Bankruptcy Court was undergoing a move from the Federal Courthouse in Phoenix to commercial leased space. The various phases of the move occurred during the last two weeks of December, 1994, and the first week of January, 1995.

3. The Debtors refer to a meeting of creditors on January 11, 1995. However, the Court cannot locate any notice in the file substantiating such a meeting. Perhaps the Debtors independently met with the Chapter 13 Trustee on that specific date, since the Chapter 13 trustees in this District schedule meetings at their offices to clarify or get additional information from *pro se* debtors.

4. *See* Docket Entry No. 22, G.E. Capital's Objection to Debtors' Request for Relief/Appeal.

uled for November 29, 1994.[5] Just prior to the sale, the Debtors filed their bankruptcy petition on November 29, 1994.[6] The trustee's sale was continued, but the Debtors were aware that the sale was being continued from time to time. *At oral argument on June 8, 1995, the Debtors conceded that they had prior notice that the trustee's sale of G.E. Capital had been continued a number of times, the last date being April 4, 1995.*

Having been advised on January 11, 1995, by the Chapter 13 Trustee, that their case had been, or was about to be, dismissed and knowing that they needed to take prompt action, the Debtors filed their motion to reinstate, with a second copy of a MML, on January 12, 1995.[7] The Debtors actually filed the motion *prior* to the Clerk's Office preparing the first order of dismissal.

Meanwhile, the Clerk's Office, believing that the MML had not been filed, prepared an order of dismissal. Unaware that the Debtors had filed a motion to reinstate, this Court executed an order of dismissal on January 23, 1995, which was entered on the docket on January 30, 1995.[8] The Clerk's Office mailed copies of this order on January 23, 1995, to the Debtors and the Chapter 13 Trustee.[9] On January 31, 1995, this Court entered an order reinstating the case. The Clerk's Office mailed thirteen copies of the order of reinstatement on February 10, 1995 to "all creditors and other interested par-

ties."[10] Thus, the Debtors' case was dismissed and immediately reinstated.

On February 10, 1995, the Clerk's office mailed out 13 copies of a general notice to the Debtors and other parties, reflecting the dates and times of the Section 341 meeting of creditors and the confirmation hearing.[11]

On March 2, 1995, the Chapter 13 Trustee filed with this Court an appearance sheet for the Section 341 meeting of creditors. The appearance sheet reflected that the Debtors had failed to appear. On March 3, 1995, this Court entered a second order dismissing the case; this time because of the Debtors' failure to appear and be examined at the Section 341 meeting of creditors. The Clerk's Office mailed fourteen copies of this order on March 13, 1995 to "all creditors and interested parties."[12] The Debtors conceded that they received a copy of this order of dismissal, but they believed that they received it on March 25, 1995, or thereabouts, well over two weeks after the order was mailed.

On March 28, 1995, the Debtors filed correspondence with this Court which this Court construed as a second motion to reinstate the case. The Debtors stated that they had not received the Notice with respect to the Section 341 meeting of creditors, which statement was in error. The Debtors also referred to a previous error made by the Clerk's Office in dismissing their case on January 23, 1995.[13] However, based upon a

---

**5.** *See, supra,* note 4.

**6.** *See* Docket Entry No. 1.

**7.** *See* Docket Entry No. 10.

**8.** *See* Docket Entry No. 9.

**9.** *See, supra,* note 8. The Clerk's Office only mailed copies of the order of dismissal to the Debtors and the Chapter 13 Trustee, since it still had not located the MML, which would have provided the information to provide notice to all creditors and interested parties.

**10.** *See* Docket Entry No. 12.

**11.** *See* Docket Entry No. 13. The Notice stated:

DATE, TIME AND LOCATION OF MEETING OF CREDITORS
MARCH 2, 1995 AT 11:30 A.M., OFFICE OF

THE U.S. Trustee, 320 N. CENTRAL AVE., SUITE 105, PHOENIX, ARIZONA
\*  \*  \*  \*  \*  \*
FILING OF PLAN AND DATE, TIME, AND LOCATION OF HEARING ON CONFIRMATION OF PLAN
... Hearing on confirmation will be held:
May 26, 1995, 1:00 P.M., 2929 N. CENTRAL AVE., 10TH FLOOR, COURTROOM 5, PHOENIX, ARIZONA.

**12.** *See* Docket Entry No. 15. The Clerk's Office mailed fourteen copies of this order because the Debtors were now included twice on the Master Mailing List.

**13.** The Debtors' motion to reinstate, filed on March 28, 1995, states as follows:

March 28, 1995
William J. Thomas,
Stephanna F. Thomas,
Debtors
Case # 94–10498 PHX–SSC

careful reading of the Debtors' March 28, 1995 correspondence, the attachments thereto, and the statements made by the Debtors at oral argument, this Court concludes that the Debtors did receive the Notice, but simply miscalendared the Section 341 meeting.[14]

The Debtors conceded at the June 8 hearing that they knew on March 28 that the trustee's sale of the subject property was scheduled for April 4, 1995. Nevertheless, the Debtors did not (i) submit a form of order to reinstate the case, (ii) request an immediate hearing for reinstatement of the case, or (iii) request a temporary restraining order or any other injunctive relief. They simply waited.

The Trustee under the deed of trust conducted a trustee's sale of the subject real property on April 4, 1995. On April 10, 1995, the Debtors filed yet another motion to reinstate.[15] The Debtors placed a self-serving statement in the motion, attributing two errors in noticing to the Court—really, the Clerk's Office. However, as noted previously, the Clerk's Office only made the initial error in January, 1995, concerning the timely filing of the MML. In any event, on April 21, 1995, this Court executed its order reinstating the Debtors' case, which order was not entered on the docket until April 26, 1995. The Debtors never provided notice to any creditor of this Court's order executed on April 21. The Court did not set aside its prior order of dismissal.

On April 12, 1995, the Debtors filed a "motion for relief" in which the Debtors sought an avoidance of the trustee's sale of the subject property. The Court had not yet reinstated the Debtors' case. On April 27, 1995, G.E. Capital filed an objection to this motion, stating that the property had been sold on April 4, 1995, thus eliminating the Debtors' interest in the property. The Debtors then filed a pleading entitled "appeal" in which the Debtors stated that the property was sold while the Debtors were under the protection of the "bankruptcy court" and that they were "appealing" the sale pursuant to Title 33 of the *Arizona Revised Statutes Annotated*, Section 33–810(C). The Court set a hearing on the Debtors' motion regarding the sale of their property and the "appeal," and G.E. Capital's objection thereto, for May 22, 1995 to address the issues. On May 15, 1995, the Debtors filed a supplemental pleading setting forth additional information for the hearing set for May 22, 1995. On May 22, 1995, this Court entered an order denying the Debtors' motion regarding sale, essentially refusing to set aside the trustee' sale of the subject property while the case was dismissed.

The Debtors then filed their most recent Motion for Reconsideration to set aside the May 22 order, and G.E. Capital filed a Motion for Relief from the Stay to continue with its eviction proceedings as to the Debtors.

### Legal Analysis

The Debtors are essentially requesting that this Court deem this case reinstated as

---

Chapter 13 Proceedings Motion to Reinstate. This is a written request to avoid
dismissal of above Case # 94–10498 PHX–SSC and Reinstate Chapter 13 Proceedings.
This is necessary due to mailing notice which we did not receive. We had been mailing timely payments to Ralph McDonald, Trustee. (See Attached [sic] copies of payments).
We went to the first meeting January 11, 1995 and found the case was dismissed.
It was reinstated January 31, 1995, and the next meeting was to be May 26, 1995 We are requesting a rescheduling of Creditor [sic] Meeting.
This was signed by both Stephanna F. Thomas and William J. Thomas. (*See* Docket Entry No. 17.)

**14.** *See* Docket Entry No. 17, with the February Notice attached thereto.

**15.** The Debtors' motion to reinstate, filed on April 10, 1995, reads as follows:

April 10, 1995
Case No. 94–10498
Chapter 13
Motion to Avoid Dismissal and Reinstate
Chapter 13 Proceedings
William and Stephanna Thomas
*Twice* in the recent past we have not been notified of our bankruptcy court date due to clerical errors on the part of the court.
We have been making all payments to our trustee Mr. Ralph McDonald 4020 N. 20th Street # 306 Phoenix, Arizona 85064
William J. Thomas
Stephanna F. Thomas
2713 W. Gila Lane
Chandler, AZ 85225
413–0605
(*See* Docket Entry No. 18.)

of March 28, 1995, the date they filed their motion to reinstate and, hence, avoid the trustee's sale on April 4, 1995 because of a pending bankruptcy proceeding. Alternatively, the Debtors are requesting that their case be deemed pending since November 29, 1994, when it was originally filed; that the order of dismissal be deemed a nullity; and that any actions taken by G.E. Capital while the case was dismissed be deemed a nullity. The Debtors cite this Court to *In re Krueger,* 69 B.R. 845 (Bankr.C.D.Cal.1987), *aff'd,* 88 B.R. 238 (9th Cir. BAP 1988), to support their position that this Court should use its equitable powers to set aside the trustee's sale under state law.

In *Krueger,* neither the debtors nor their counsel were present at the confirmation hearing and the hearing was continued. *Id.* at 846. The court had expressed concern that there might not be sufficient time ·to notice the amended plan and stated "[y]ou may give him (Mr. Goldstein) a call and make sure he gets it out." Neither debtors' counsel nor debtors were informed of the continued hearing date. *Id.* Neither debtors' counsel nor debtors appeared at the continued hearing, and upon the trustee's motion, the case was dismissed. The debtors, upon receipt of a letter regarding dismissal, attempted to contact the trustee. The debtors' counsel also attempted to contact the trustee and inform her that he did not receive notice of the continued hearing.

Unbeknownst to the debtors or their counsel, the foreclosure sale of the debtors' property was rescheduled from July 10, 1986 to August 14, 1986, to August 26, 1986 and then to October 1, 1986. On October 4, 1986, the debtors were advised that the foreclosure sale had occurred, and the creditor requested a voluntary turnover of the home. On October 6, 1986, another counsel for the debtors appeared before a bankruptcy judge on an *ex parte* basis to vacate the prior order of dismissal and to avoid the foreclosure sale. At the *ex parte* hearing, the judge reinstated the case, effective September 15, 1986, and continued the proceeding on avoidance.

The trial court in *Krueger* determined that the sale had occurred in accordance with California law and that there was no violation of the stay because the case was dismissed and had not yet been reinstated.

On the specific issue of the effect of the trustee's sale while the case was dismissed, the *Krueger* court stated:

> The foreclosure sale proceeded in accordance with California law. There was no violation of the automatic stay because the foreclosure sale took place after [the bankruptcy judge's] dismissal order and before [another bankruptcy judge's] reinstatement order. The [bankruptcy judge's reinstatement order] cannot give retroactive effect to the automatic stay and thereby cause the foreclosure sale to be a violation of the automatic stay.

*Id.* at 847. However, the court also concluded that it had instructed creditor's counsel to give the debtors and their counsel notice of the continued confirmation hearing which was not done. Thus, the creditor and its counsel were not innocent parties. *Id.* at 848. In *Krueger,* the court determined that if it denied the relief requested to avoid the trustee's sale, the debtors would lose their home innocent of any wrongdoing and without due process. *Id.* at 849–50. The *Krueger* court exercised its equitable powers under Bankruptcy Code Section 105(a) and vacated the foreclosure sale. *Id.*

This decision was affirmed by the Bankruptcy Appellate Panel in the decision of *In re Krueger,* 88 B.R. 238 (9th Cir. BAP 1988). The Panel determined that the case was dismissed in violation of the debtors' due process rights; that the dismissal was properly vacated; and that as a result, the stay was continuously in effect from the date of filing of the petition. Therefore, on the issue of whether the foreclosure sale occurred in violation of the automatic stay, the Panel disagreed with the analysis of the bankruptcy court. The Panel stated:

> In our view, because the order dismissing the case was void, the stay was continuously in effect from the date the petition was filed. Therefore, the foreclosure sale was held in violation of the automatic stay.

*Id.* at 241.

In this case, the Debtors miscalendared the Section 341 meeting of creditors, which

led to the Debtors' failure to attend the meeting and the March 3, 1995 order of dismissal. Although the Debtors made a sufficient showing in an *ex parte* motion that their case be reinstated, they did not make any showing or carry their burden of proof that the March 3 order of dismissal should have been rescinded or set aside for a failure to accord due process to the Debtors. However, as discussed hereinafter, *Krueger* is an aberration and not consistent with other case law.

Furthermore, this Court concludes that the Debtors did not present any evidence to rebut the presumption that an item placed in the United States mail is presumed to have been properly delivered. *In re Bucknum*, 951 F.2d 204 (9th Cir.1991). The Debtors' burden of proof on this issue alone is clear and convincing evidence. This Court concludes that the Debtors did receive the Notice of the Section 341 meeting of creditors, miscalendared the date and failed to appear on March 2, 1995. The Debtors then, subsequently, received an order of dismissal, but failed to take prompt action to reinstate their case or prevent a trustee's sale of the subject property on April 4, 1995. Unlike in *Krueger*, the Debtors were accorded due process in this matter.

The Court has done additional research on the issue of a trustee's sale of the real property while a case has been dismissed. In *Tome v. Baer (In re Tome)*, 113 B.R. 626 (Bankr.C.D.Cal.1990), the debtors were in default pursuant to the promissory note and deed of trust executed by them. The creditor had recorded the notice of default and had scheduled a trustee's sale of the debtors' residence for September 22, 1986. The debtors filed their Chapter 13 petition on September 19, 1986. The creditor postponed the trustee's sale a number of times while the debtors' case was pending. Each postponement was for approximately a month and was announced at the time of each scheduled sale. No other notice was given. *Id.* at 627–28.

*On March 11, 1987, the court granted the creditor relief from the stay;* on March 20, 1987, certain individuals purchased the note and deed of trust of the creditor; and on March 25, 1987, the trustee's sale was conducted. *Id.* at 628.

Irrespective of the fact that the creditor and the individuals had proceeded according to the applicable state law as to trustee's sale of real property, the *Tome* court determined that *further notice* beyond that required by state law was necessary before a secured creditor could foreclose on property that was part of the bankruptcy estate. *Id.* at 632.

In *Tome*, the court relied on the fact that the property was still property of the bankruptcy estate at the time the trustee's sale occurred. *Id.* at 632–33. The court concluded that there was equity in excess of the debtors' exemption and that the debtors and the unsecured creditors were harmed as a result of the sale. *Id.* at 633. The debtors were harmed as a result of the loss of their homestead exemption; the unsecured creditors were harmed as a result of the loss of the equity in excess of the secured debt and the homestead exemption, or the ability of the debtors to repay the excess equity to the unsecured creditors through the vehicle of a confirmed Chapter 13 plan.

The *Tome* court then noted that a Chapter 7 trustee or a debtor in possession in a Chapter 13 proceeding would have to provide notice and an opportunity for a hearing before the trustee or debtor could sell bankruptcy estate property. 11 U.S.C. § 363(b)(1).[16] The court then stated that although "the Bankruptcy Code [did] not specify that another party who [sold] property of the estate [was] subject to the same requirement, it [did] not follow that no [additional] notice [was] required." *Id.*[17] The *Tome* court concluded that a secured creditor should at least republish its notice and give notice to the owner of the property before a foreclosure sale of the real property could occur. *Id.* at 634.

---

**16.** 11 U.S.C. § 363(b)(1) provides as follows:
(b)(1) The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.

**17.** *See also id.* at 633–34 and n. 12 wherein the court reiterates that neither the Bankruptcy Code nor the Bankruptcy Rules require any such additional notice.

However, there were equitable circumstances in the *Tome* decision which persuaded the court to require republication of the notice. For instance, the court had confirmed a Chapter 13 plan which provided for the cure of all of the arrearages owed to the secured creditors as to the debtors' residence, the payment in full of the priority taxes, and the payment of 100 percent of the claims of the unsecured creditors. *Id.* at 627. The creditor and the individuals that obtained the note and deed of trust were aware that the debtors were trying to refinance their indebtedness on the residence. *Id.* at 628, 635. In fact, the debtors would have paid the creditor in full *prior* to the foreclosure sale of the debtors' residence. *Id.* at 635. The note and deed of trust were transferred five days prior to the foreclosure sale of the debtors' residence; the debtors were not so advised; the recorded notice of default listed the wrong creditor at the time of the sale; and the creditor provided "false and misleading information concerning the loan" to the debtors which made it impossible for the debtors to pay the loan in full prior to the foreclosure sale. *Id.* at 634.

From these circumstances, the *Tome* court concluded that republication of the notice of sale and notice to the owner of the property was required. The better analysis would have been to consider that the debtors, the Chapter 13 trustee, and the unsecured creditors originally had notice of the motion to vacate the stay. If any of the parties had believed that there was equity in the property, or that there was no equity in the property but the property was necessary for an effective reorganization, *they could have objected to the stay being vacated. They did not so act.* Once the stay was vacated, the creditor could pursue its rights and remedies under the applicable state law and the debtors and unsecured creditors could bid at the trustee's sale or take other appropriate action to protect their rights. Perhaps the facts were so egregious in *Tome* that a state court would have set aside the trustee's sale.

However, that decision should have been left solely to the state courts.

What is unfortunate, although well intentioned, is that *Tome* created an additional noticing requirement that was not provided for or contemplated under state law. It is engrafting federal common law in an area that has been reserved solely to the states. *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Such federal common law poses more problems than it resolves. For instance, how much notice is required to the owner of the real property pursuant to the *Tome* decision? One day? One week? There is no answer.[18]

This Court declines to follow the *Tome* reasoning and impose any additional noticing requirements on G.E. Capital. In any event, on March 3, 1995, when the case was dismissed, the Debtors were aware of the April 4, 1995 trustee's sale and had ample opportunity to take action to protect their interest in the subject real property.

Another decision which should be briefly discussed is *In re Acosta,* 181 B.R. 477 (Bankr.D.Ariz.1995). In *Acosta,* the facts were as follows:

On January 10, 1995, the *Acosta* bankruptcy proceeding was dismissed for failure of the debtors to provide the Chapter 13 trustee with proof that their 1993 state income tax return had been filed.

The debtors filed their 1993 state income tax return and provided verification of filing to the Trustee.

On January 27, 1995, the debtors filed a motion to reinstate their case.

On February 7, 1995 the trustee's sale (which had been previously continued orally pursuant to *Ariz.Rev.Stat.Ann.* § 33-810(B)) was conducted. The **debtors received no actual notice of the continued trustee's sale.** (emphasis added).

On February 14, 1995, Fleet Mortgage received a Trustee's Deed which was dated and recorded the same day.

---

18. The California legislature was apparently concerned with *Tome,* since it amended *Cal.Civ.Code* § 2924g(c)(1) and (c)(2) in 1993 and 1994 after the *Tome* decision was rendered to clarify what was required of a creditor insofar as renoticing was concerned if a bankruptcy petition were filed. *See Stats.* 1993, c. 686 (A.B.1219), § 7; *Stats.* 1994, c. 587 (A.B. 3600), § 1.2.

On February 15, 1995, the Acosta bankruptcy proceeding was reinstated.

*Id.* at 477–78.

In *Acosta,* the court concluded "that whether or not a motion for reinstatement had been filed, because of the intervening bankruptcy, [the creditor] had a duty to provide the [d]ebtors with *actual notice* of the rescheduled trustee's sale date even after dismissal of the [d]ebtors' petition." *Id.* at 479. The court cited to *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), for the proposition that "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Acosta* 181 B.R. at 479 (quoting *Mullane,* 339 U.S. at 314–15, 70 S.Ct. at 657).

The *Acosta* court also relied on *Tome* and concluded that more than oral notice of a postponement at the time of the trustee's sale is required to apprise the debtor and other interested parties that a foreclosure sale will occur subsequently. The *Acosta* court noted that the Fourteenth Amendment to the United States Constitution also required that due process be accorded to the party before a creditor might divest that party of its interest in property. *Acosta,* 181 B.R. at 479. Thus, the foreclosure sale was avoided, and the trustee's deed was deemed void. *Id.* at 480.

This case is distinguishable from *Acosta.* Here, the Debtors admitted that they had notice of the trustee's sale well prior to the April 4, 1995 date that the sale was conducted. As noted previously, the Debtors had the ability to request immediate reinstatement of their proceedings or to seek a temporary restraining order or other injunctive relief from a court of competent jurisdiction in order to halt the trustee's sale. The Debtors have filed numerous voluntary bankruptcy petitions. Specifically, the Debtors commenced a case in 1989, 1992, and 1994. Moreover, the Debtors have filed numerous pleadings in this case concerning a violation of the automatic stay by other creditors, have pursued litigation against G.E. Capital and other parties to have the trustee's sale set aside pursuant to state law, have promptly requested reinstatement of this case in January, 1995 to keep the automatic stay in place, and have generally shown a sophistication in the handling of their Chapter 13 proceedings that is far beyond that of most *pro se* debtors that appear in this Court.

Certainly the Debtors erred in not properly calendaring their Section 341 meeting of creditors for March 2, 1995. However, given the Debtors' sophistication and ample opportunity to reinstate their case between March 3, the date of the dismissal order, and April 4, 1995, the date of the trustee's sale, the Court sees no basis to exercise its equitable powers. Even if such equitable powers do exist, the Court sees no basis to reinstate the case as of the date the Debtors filed their motion to reinstate; that is, March 28, 1995, and automatically vacate the trustee's sale of April 4, 1995. The Court also sees no basis to vitiate the actions of a creditor which were taken while the case was dismissed. The Debtors made no showing in their *ex parte* motion to reinstate their case that the Court's order of dismissal should be rescinded.

As noted previously, there are a number of decisions which view foreclosure sales differently than *Krueger, Tome* or *Acosta.*[19] In

**19.** In oral argument before this Court in a related matter, the Debtors relied on *France v. L & C, Inc. (In re Lewis & Coulter, Inc.),* 159 B.R. 188 (Bankr.W.D.Penn.1993) and *In re Robert,* 171 B.R. 881 (Bankr.N.D.Cal.1994). (They did not cite *Robert* in any pleading filed with this Court.) In *Lewis & Coulter,* the court allowed an administrative expense claim to an employee that had rendered services to the debtor while the case was dismissed. The creditor had rendered services during the bankruptcy proceedings, while the case was dismissed, and then when the case was reinstated. Although the court exercised its equitable powers to allow an administrative expense for the time period while the case was dismissed, the reasoning is less than clear, and no court has followed its analysis. This Court will not follow the reasoning of *Lewis & Coulter,* if at all relevant to the issues before this Court, in light of the authority which is on point and cited in this Decision.

The Debtors also rely on the *Robert* decision, which was only presented at oral argument on a

*Houghton v. First American Capital Bank (In re Houghton)*, 123 B.R. 869 (Bankr. C.D.Cal.1991), the court previously granted the First American Capital Bank (the "Bank") relief from the automatic stay in Houghton's individual bankruptcy proceeding and in the bankruptcy proceeding filed by the professional entity of Thomas C. Houghton, D.D.S. *Id.* at 870. The court, in granting relief from the automatic stay in identical orders which were entered around July 20, 1990, stated:

> [The Bank] is granted immediate relief from the automatic stay pursuant to 11 U.S.C. Section 362 for all purposes necessary under state law including, but not limited to, foreclosure upon and sale of the real property commonly known as 12642 Hinton Way, Santa Ana, California and legally described as ... (legal description omitted). [The Bank] may proceed with foreclosure on the subject property, but shall not hold its' [sic] Trustee Sale until on or after October 12, 1990.

*Id.* at 871. The orders also permitted the Bank to proceed with eviction proceedings. *Id.* The Bank foreclosed, obtained a state court judgment against the debtors for possession of the property and locked the debtors out of the premises. The debtors subsequently filed a motion for a temporary restraining order and for relief from prior orders lifting the automatic stay. The debtors alleged, *inter alia*, that the Bank failed to comply with *California Civil Code* Section 2924. *Id.* The *Houghton* court considered the legislative history and amendments to *California Civil Code* Section 2924g(d) [20], determined that the Section

was clear on its face, stated that the bankruptcy court orders did not meet the requisites to modify the seven-day rule set forth in Section 2924g(d), and held that "because the Bank's foreclosure sale was conducted just three days after termination of the [automatic] stay of foreclosure sale which ... [the bankruptcy court] order did provide for, it ... [was] likely that the foreclosure sale was invalid." *Id.* at 875–76. However, the *Houghton* court strictly applied state law in arriving at such a result.

In *Houghton*, the court did state, in *dicta*, that it "respectfully disagree[d]" with the conclusion in *Tome* that "a secured creditor may not foreclose on property of the [bankruptcy] estate without giving further notice beyond the minimum required by California law." *Id.* at 874, n. 6.

The Court of Appeals of the State of Arizona has discussed postponement notice under the *Ariz.Rev.Stat.Ann.* Sections 33–808 and 33–809 and the relationship of these Sections to the automatic stay. In *BAM Invest., Inc. v. Roberts*, 172 Ariz. 602, 838 P.2d 1363 (1992), the court followed the Ninth Circuit decision in *Matter of Roach*, 660 F.2d 1316 (9th Cir.1981), including that portion of the *Roach* decision which stated that the automatic stay did not bar oral postponements of a trustee's sale pursuant to state law and that such postponements maintained the "status quo". *BAM Inv., Inc.*, 172 Ariz. at 604, 838 P.2d at 1365.

Furthermore, the reinstatement of this case does not retroactively reimpose the automatic stay. *Lashley v. First Nat'l Bank of*

---

related matter. First, the *Robert* decision has been overruled, in part, by the recent decision of *In re Pacific Atlantic Trading Co.*, 33 F.3d 1064 (9th Cir.1994) and *In re Beltran*, 177 B.R. 905 (9th Cir. BAP 1995). The *Robert* court did state that if a case is reinstated, it is not as if a new case has been filed which would force the court to fix a new date for the filing of proofs of claims. *Id.* at 883. The *Robert* decision does not discuss the Ninth Circuit authority concerning a foreclosure sale of real property while a bankruptcy case is dismissed. The *Robert* decision is not applicable to the issues before this Court.

**20.** *Cal.Civ.Code* § 2924g(d) provided:
[T]he [foreclosure] shall be conducted not sooner than seven days after the earlier of (1)

dismissal of the action [in which a postponement or stay of the foreclosure sale was ordered] or (2) expiration or termination of the injunction, restraining order, or stay (which required postponement of the sale), whether by entry of an order by a court of competent jurisdiction, operation of law or otherwise, unless the injunction, restraining order, or subsequent order expressly directs the conduct of the sale within that seven-day period. If the sale had been scheduled to occur, but this subdivision precludes its conduct during that seven-day period, a new notice of postponement shall be given if the sale had been scheduled to occur during that seven day period.

*Live Oak (In re Lashley)*, 825 F.2d 362 (11th Cir.1987); *cert. denied*, 484 U.S. 1075, 108 S.Ct. 1051, 98 L.Ed.2d 1013 (1988), *reh'g denied*, 485 U.S. 1016, 108 S.Ct. 1493, 99 L.Ed.2d 720 (1988); *Weston v. Cibula (In re Weston)*, 101 B.R. 202 (Bankr.E.D.Cal.1989), *aff'd*, 123 B.R. 466 (9th Cir. BAP 1991), *aff'd*, 967 F.2d 596 (9th Cir.1992), *cert. denied sub nom. Weston v. Rodriguez*, 506 U.S. 1051, 113 S.Ct. 973, 122 L.Ed.2d 128 (1993); *see also Weston v. Rodriguez (In re Weston)*, 110 B.R. 452 (E.D.Cal.1989),[21] *aff'd*, 967 F.2d 596 (9th Cir.1992), *cert. denied*, 506 U.S. 1051, 113 S.Ct. 973, 122 L.Ed.2d 128 (1993); *In re Shaw*, 16 B.R. 875 (9th Cir. BAP 1982).

Although the Debtors rely on *Krueger* to support the relief they are requesting, the Bankruptcy Appellate Panel decision of *In re Shaw*, 16 B.R. 875 (9th Cir. BAP 1982), is more analogous to the issues before this Court. In *Shaw*, the debtors obtained a stay pending appeal after the court vacated the automatic stay. The bankruptcy court stayed its order for a period of 180 days, assuming that the appeal would be resolved within that period of time. Prior to the expiration of the 180–day period, the debtors were warned that once the stay pending appeal was terminated, the creditor would proceed with a foreclosure sale. The court did not immediately grant another stay pending appeal. The debtor sought on two occasions to seek an accelerated hearing, which the court did not grant. Once the stay expired, the creditor foreclosed. The bankruptcy court subsequently held a hearing on the extension of the stay pending appeal, noted its disapproval that the foreclosure sale had been conducted, reinstated the stay pending appeal, and vacated the foreclosure sale. *Id.* at 876.

The *Shaw* Panel relied on the Bankruptcy Act case of *Hardt v. Kirkpatrick*, 91 F.2d 875 (9th Cir.1937), *cert. denied* 303 U.S. 626, 58 S.Ct. 762, 82 L.Ed. 1088 (1938), stating that an injunction or other relief should be obtained to prohibit a foreclosure sale. A foreclosure sale would only be set aside upon the showing of circumstances which required the interference of the bankruptcy court. *Id.* at 876–77. The general rule in *Shaw*, upholding a foreclosure sale when the automatic stay or a judicial stay are not in effect, shall be applied in this case.

According to *Lashley*, *Weston*, and *Shaw*, once the bankruptcy case is dismissed or the automatic stay has been vacated, the debtor must seek an affirmative stay or injunction to prevent creditors from pursuing their remedies under applicable state law. If the debtor does not so timely act, any actions taken by the creditor while the case is dismissed or while a stay is not in effect will be valid. The Debtors' attempt to couch their relief not as a retroactive reimposition of the stay, but rather a rescission of the order of dismissal so that the case may be deemed pending as of the time it was originally filed, misses the point. The court certainly has the power to rescind its orders, but the court does not exercise such a power which will avoid a foreclosure sale conducted pursuant to state law, if at all, unless the debtor has shown that he or she was not accorded due process.

This Court notes that recent Ninth Circuit authority does not require this Court to go to extraordinary lengths to accommodate the Debtors because they are *pro se*. *In re Glass*, 60 F.3d 565 (9th Cir.1995). In *Glass*, one debtor transferred his home prepetition to his son and failed to list the transfer or the property in the schedules filed in a Chapter 11 proceeding and a subsequently filed Chapter 7 proceeding. Once the Chapter 7 trustee threatened to sue the debtor, the son transferred the property back to the debtor and the debtor amended his schedules and attempted to claim a homestead exemption on the property. The debtor argued that because he was *pro se* for the bulk of the proceedings, he should be granted "additional consideration because the record demonstrate[d] that he did not fully understand his

---

**21.** The District Court, in *Weston*, acting as an appellate court, reviewed the Bankruptcy Appellate Panel decision of *Krueger* and declined to follow it, noting that orders were set aside on grounds other than a failure to accord due process. 110 B.R. at 457 and note 3. One may conclude from *Weston* that if an order were set aside on other than due process grounds, a creditor's actions while the case was dismissed would not be set aside.

duties as a debtor." *Id.* at 569–70. The *Glass* court rejected this argument outright, noting that the debtor should not be allowed to justify his failure to disclose assets by stating that the debtor was *pro se.* After all, the debtor did not need the assistance of counsel to fill out the schedules to be filed with the court. *Id.* at 570.

In this case, the Debtors have proceeded with a number of cases since 1989. They have filed a number of pleadings with this Court which reflect that they have the time and the sophistication to pursue tenaciously a particular course of action. This Court must place responsibility on the Debtors to notify the bankruptcy court if they require immediate relief. The fact that these Debtors are *pro se* does not excuse their failure to act for a prolonged period of time to stop the trustee's sale of their residence.

Based upon this record, the Court concludes that it shall not reexamine its May 22, 1995 order, which refused to avoid the trustee's sale of the Debtors' property, on the grounds that the automatic stay should have been retroactively reimposed as of March 28, 1995, the date the Debtors filed their motion to reinstate, or retroactively reimposed as of the filing of the Chapter 13 petition in this case.

However, the June 8 hearing before this Court also considered whether this Court should vacate the automatic stay, reimposed as of April 26, 1995, once the order of reinstatement of the case was entered by the Court, to permit G.E. Capital to proceed with a state court action to evict the Debtors from their residence. This is a separate issue. The Debtors have a pending adversary proceeding to set aside the trustee's sale.[22] The Debtors reiterate in the adversary proceeding many of the arguments that they have presented in this Motion for Reconsideration or in their underlying motion regarding sale of property. However, the Debtors also make additional allegations concerning fraud and whether the state law procedures concerning trustee's sales of real property were followed. The Debtors request that all of the

issues in the adversary proceeding be addressed before they are evicted. This Court currently has G.E. Capital's motion for a judgment on the pleadings under advisement in the adversary.

Rather than rule on G.E. Capital's Motion to Vacate the Automatic Stay at this time so that the state court eviction proceedings may continue, the Court shall continue said matter for further hearing until this Court has ruled on G.E. Capital's motion for a judgment on the pleadings.

Based upon the foregoing, the Debtors' Motion for Reconsideration is DENIED, and G.E. Capital's Motion to Vacate the Automatic Stay shall be continued for hearing to a date after this Court's ruling on G.E. Capital's motion for a judgment on the pleadings.

22. The Debtors filed the complaint in the Arizona Federal District Court. The civil proceeding has since been transferred to the Bankruptcy Court.